**Harold Dean RIVERS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil A. No. 95-0328–R.**

United States District Court, W.D. Virginia, Roanoke Division.

March 18, 1996.

Harold Dean Rivers, White Deer, PA, pro se.

Julie C. Dudley, U.S. Attorney's Office, Roanoke, VA, for respondent.

### *MEMORANDUM OPINION*

TURK, District Judge.

HAROLD DEAN RIVERS, a federal inmate proceeding *pro se*, brings this action as a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. Specifically, Rivers seeks to vacate the conviction and sentence imposed upon him by the United States District Court in Abingdon, Virginia on July 19, 1977, for two counts of destroying vehicles using explosives.[1] Respondent has filed a motion to dismiss, to which petitioner has responded, making the matter ripe for the court's consideration. After review of the existing records in this case, it is the opinion of the court that re-

spondent's motion to dismiss must be granted.

### I. Factual Background

On April 11, 1977, a federal grand jury returned a five-count indictment charging Harold Dean Rivers with using explosives to destroy two vehicles in October, 1976; one of the vehicles was a state police vehicle. At the time the indictment was returned, Rivers was incarcerated in the Wise County Jail on state charges. A bench warrant on the federal indictment was issued and filed as a detainer at the Jail on April 12, 1977. Rivers was released on April 28 after his parents posted a secured bond on his behalf. He retained private counsel.

The trial on the explosives indictment was originally scheduled for June 30 through July 1, 1977. Rivers' counsel made several pretrial motions, regarding joinder of the counts and discovery. The United States moved the court to order Rivers committed to the custody of the Bureau of Prisons for purposes of conducting a competency evaluation; the clerk's notes indicate that Rivers' counsel opposed this motion. The court continued the trial to July 18 through July 19, 1977, and issued an order on June 10, 1977, directing that Rivers report on June 24 to the Veterans Administration Hospital (hereinafter "VA") in Salem, Virginia to undergo a psychiatric evaluation to determine his competency to stand trial. The VA doctor later reported to the United States Attorney's Office which informed the court that although Rivers had appeared at the VA on June 24 and submitted to a partial exam, he failed to cooperate with the psychiatric portion of the evaluation, thus failing to comply with the court order.[2]

---

1. Although the sentence is more than seventeen years old, Rivers is still in custody under this sentence as he has not completed serving it. An affidavit submitted by respondent indicates that Rivers is now serving a federal criminal sentence for bank robbery and firearms offenses, imposed by the United States District Court, Northern Alabama. A warrant for parole violation on the 1977 sentence has been lodged as a detainer against him; once he completes the Alabama sentence, he will have 2274 days remaining to be served on the parole violation from the 1977 sentence. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (detainer filed with institution where

petition presently imprisoned constitutes sufficient custody to attack conviction underlying detainer).

2. The court recently obtained the psychological report from the June 24, 1977 examination of Mr. Rivers at the Salem VA; this report was not in the official files of the VA, as Mr. Rivers is not a veteran, but in the private files of the doctors involved in the examination of Rivers in 1977. The report does not include any specific finding concerning Rivers' ability or inability to participate in his own defense in a criminal trial. Rivers alleges that he attended the June 24 appointment and that a brain wave test was performed

By order dated July 1, 1977, the court again ordered Rivers and his counsel, Strother Smith, III, to report to the VA Hospital on July 6 for a full competency examination of Rivers. After being informed that Rivers had failed to appear at the VA on July 6 as ordered, the court issued a third order, directing Rivers to report to the VA Hospital for a complete competency examination on July 12, 1977, and warning that if he failed to appear, he would be involuntarily committed to the Federal Correctional Institute in Springfield, Missouri, for a psychiatric evaluation. Neither party produces any record indicating whether or not Rivers met the July 12 examination as scheduled or what the outcome of any such examination was, but the record does not indicate that he was ever committed to the facility in Missouri as threatened. River does not allege that he attended the third, scheduled appointment on July 12 for a full competency examination.[3]

The federal court empaneled a jury in Abingdon on July 18, 1977 to try Rivers on the explosives indictment. Handwritten minutes of the trial indicate that shortly after the jury was empaneled, Rivers decided to change his plea to nolo contendere on Counts 1 and 3; Counts 2, 4 and 5 were nolle prossed. Rivers signed a written plea agreement to this effect, indicating that he had reviewed the indictment with his attorney who fully explained the charges and maximum penalties to him and that he made the plea "voluntarily and without threat or promises of any kind." The court accepted the plea. Thereafter, the government put on

evidence to support a finding of guilty on Counts 1 and 3 and rested. When court resumed on July 19, the defendant was found guilty as to Counts 1 and 3. Rivers put on evidence, apparently as to sentencing, calling several witnesses, and rested. Then, the court called Rivers for testimony.[4] After completion of the evidence and summation by counsel, the court imposed a sentence of fifteen years.

Newspaper articles which appeared in the *Roanoke Times & World News* on July 19 and 20, 1977, gave an account of proceedings in Rivers' case in Abingdon on July 18 and July 19, 1977 which neither petitioner nor respondent have disputed. Neither of these articles mention any determination in open court that Rivers was competent to stand trial nor any objection from Rivers or his counsel that he should not be tried because no competency determination had been made. Rivers offers affidavits from family members stating that on July 19, during sentencing, Rivers' defense counsel mentioned, in the presence of the United States Magistrate and the District Court Judge, that a brain scan had shown that his client suffered from brain damage.

No presentence report was prepared in Rivers' case. However, a post-sentence report was done. In that report, the probation officer notes that Rivers had been in an automobile accident in 1975, sustaining a serious blow to the head when he hit the steering wheel. He was treated and released from the hospital after the accident, the pro-

---

which showed that he had physical and chemical brain damage. None of the tests mentioned in the VA report is specifically identified as a "brain wave" test and the report makes no mention of any brain damage revealed by any of the tests. Rivers also has filed a motion to strike from the record the recently obtained psychological report from June 24, stating that the court should not base its ruling in this case upon this report. The court agrees. As the court's finding herein that Rivers' § 2255 petition must be dismissed is based on grounds entirely separate from any of his psychological records, his motion to strike must be denied as moot.

3. Rivers has filed a motion requesting a hearing, pursuant to 28 U.S.C. § 1734(b), to determine the content of records which he and the United States Attorney's Office and the Clerk's Office of

this court have been unable to locate. The primary document which Rivers seeks to obtain is the report of the "brain scan" test allegedly performed by the VA doctors at the June 24, 1977 examination. He himself submits a letter from John M. Presley, M.D., Director of the VA Hospital in Salem, dated July 1, 1993, stating

We have checked our records thoroughly and find no indication that you were ever a patient at our facility.... It is our belief that any evaluations were provided directly to the court, and no record was maintained as the evaluations were a special arrangement for the court.

4. After intensive investigation, the United States Attorney and the Clerk's Office have determined that the record of these proceedings on July 18 and 19, 1977 was never transcribed and that the court reporter's notes cannot be located.

bation officer noted, but "[Rivers] and his family seem to feel that he sustained a more serious type of injury in this regard. The family indicated that a brain scan done in 1977 showed some brain damage to the left side; likely the result of the above mentioned accident."

Rivers did not appeal his 15–year sentence. On August 8, 1977, counsel did file a motion for reconsideration and reduction of sentence to which the government responded. By order dated January 9, 1981, the court refused to reduce Rivers' sentence, but did direct that Rivers would be eligible for parole after serving three years.

## II. Petitioner's Claims

Rivers filed this motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255, on April 13, 1995, nearly eighteen years after his conviction and sentencing. He raises the following claims:

(1) Although the court had reason to believe that petitioner was incompetent to stand trial in July 1977, based on a brain wave test showing that he suffered from brain damage, he was denied a hearing on the question of his competency, a violation of due process. He also alleges that he was denied the various constitutional rights which adhere to any criminal hearing, such as the right to call, confront and cross-examine witnesses.

(2) The court failed to comply with Rule 11 of the Federal Rules of Criminal Procedure in accepting his plea of nolo contendere. Specifically, the court did not (1) ensure that petitioner got needed psychiatric treatment; (2) did not tell petitioner in open court and make sure that he understood the nature of the charge to which he was pleading, the mandatory minimum penalty, the possible maximum penalty, parole possibilities, the court's responsibility to follow sentencing guidelines, but with

the possibility of downward departure,[5] and the possibility that the court could order petitioner to make restitution; (3) did not address petitioner in court to see that the plea was voluntary; and (4) did not make a verbatim record of proceedings of the court's advice to petitioner concerning the voluntariness and accuracy of his plea.

(3) Petitioner received ineffective assistance of counsel in that counsel failed to investigate his mental health or mental defects, failed to ensure petitioner a competency hearing (and failed to interview witnesses and experts about petitioner's mental competency for such a hearing), and failed to file notice of a possible insanity plea.

Petitioner states that he first discovered the incompetency problem with his 1977 trial in 1992 when someone working with Legal Aid advised him of the problem in the court records. Since then, Rivers states, he has attempted to obtain the missing records in this case through letters to the Salem VA hospital and the court and through actions filed under the Freedom of Information Act.[6] The United States Attorney's office has conducted an intensive search for these records as has the Clerk's Office of this court, to no avail. The court reporter's notes cannot be found and the proceedings were apparently never transcribed. Likewise, the court has not found any documentation of the "brain wave" test which allegedly indicated that Rivers had brain damage.

## III. Analysis of the Arguments

 Respondent argues that Rivers' eighteen year delay in filing this § 2255 petition has prejudiced the United States' ability to respond adequately to his allegations. It is true that 28 U.S.C. § 2255 includes a provision that such a motion may be "made at any time." However, Rule 9(a) of the Rules Governing § 2255 Proceedings provides:

been advised of USSG sentencing possibilities such as downward departure.

**5.** This language in Rule 11, concerning sentencing guidelines and downward departures, was added to the rule in a 1989 amendment, after the implementation of the United States Sentencing Guidelines (USSG) in 1988 and long after Rivers entered his guilty plea in 1977. Rivers was not sentenced under the USSG, so would not have

**6.** In his motion to strike, Rivers documents in great detail his efforts to procure these records.

A motion for relief made pursuant to these rules may be dismissed if it appears that the government has been prejudiced in its ability to respond to the motion by delay in its filing unless the movant shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred.

Courts interpret this provision to create a defense to § 2255 motions akin to the equitable remedy of laches, but limited to cases where the delay in bringing the motion is unreasonable and the government affirmatively shows that the delay prejudiced its ability to respond to the merits of petitioner's allegations. *See Oliver v. United States,* 961 F.2d 1339 (7th Cir.), *cert. denied,* 506 U.S. 976, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992). *See also United States v. Gutierrez,* 839 F.2d 648, 650 (10th Cir.1988) (mere passage of time insufficient to bar § 2255 motion under Rule 9(a); government must make "particularized showing of prejudice in its ability to respond").

The *Oliver* case involved a § 2255 motion under circumstances remarkably similar to Rivers' present motion. In 1990, seventeen years after his 1973 conviction, Petitioner Oliver filed a § 2255 motion alleging that his guilty plea had not been knowingly, intelligently and voluntarily entered because he had not been advised of his right to confront his accusers or his right against incriminating himself. 961 F.2d at 1341. Like Rivers, Oliver had never appealed his conviction, so no transcript had ever been prepared from the court reporter's notes of his plea and sentencing proceedings. *Id.* The district court clerk's office made a diligent search for the court reporter's tapes, which had been forwarded from the clerk's office to a central storage facility years earlier; the tapes could not be found. *Id.* In addition, the United States Attorney's office certified that their records are routinely destroyed ten years

after disposition of the case, in accordance with federal law. *Id.* and 28 U.S.C. § 753(b).

As his only excuse for not challenging the validity of his guilty plea earlier, Oliver stated that he was not aware he could challenge the plea until 1987, fourteen years after his conviction, when his brother was assigned to the same prison and the two men discussed the matter; thereafter, Oliver attempted to get records from his 1973 criminal proceedings and finally filed his § 2255 motion in 1990. *Id.* The district court and the Court of Appeals both found his excuses insufficient and held that the record amply supported a finding of unreasonable delay in bringing the § 2255 motion. *Id.* at 1342. Moreover, the courts found that the unreasonable delay in filing the motion had prejudiced the government in responding to the possible merits of Oliver's § 2255 claims "because of its destruction of records after ten years and the unavailability of any other means of producing transcripts of the guilty plea and sentencing." *Id.*

After review of the record, the court finds that Rivers' petition must be dismissed under Rule 9(b). *See Oliver, supra.* The government is clearly prejudiced in its ability to respond to the merits of Rivers' claims because no transcript or other full record of the trial and sentencing are available after nearly nineteen years. It is impossible at this late date to reconstruct the court's proceedings sufficiently to determine whether an adequate judicial determination of competency was made before Rivers' guilty plea or whether the court complied with Rule 11 in accepting his plea. Without a sufficient record to determine whether or not the competency finding was made, the government cannot adequately respond to Rivers' claim concerning ineffective assistance of counsel for failing to ensure him a competency hearing.[7] Even if documentation of Rivers' alleged brain scan, showing brain damage, *could be found, such a finding would not, in itself, be sufficient to support his claim that*

---

7. The court files do demonstrate that on May 11, 1977, counsel did file with the court a notice that his client might rely upon the defense of insanity at the time of the alleged crime and that, if he did raise such a defense, he intended to "introduce expert testimony relating to mental disease,

defects, or other conditions bearing upon the issue of whether he had the mental state required for the offense charged." Therefore, Rivers' claim that counsel was ineffective for failing to file such a notice is without merit.

he was denied a court determination of competency to stand trial. Likewise, the report recovered from the Salem VA concerning Rivers' June 24, 1977 psychological testing, although it does not indicate any finding of brain damage, does not establish that he was competent for trial. The presence or absence of brain damage might or might not result in legal incompetency. Thus, the only existing records are simply insufficient to allow the government to respond adequately to Rivers' claims.

It is also clear that Rivers was aware of the necessary facts to bring this § 2255 motion at the time of his conviction. He and his family assert in affidavits that they were aware of a competency issue at the time he was sentenced; clearly, then, they must also have been aware of the issue in the years immediately following the conviction. The fact that he did not have the actual psychological reports about his competency would not have prevented him from raising his claims, on direct appeal[8] or in an earlier § 2255 motion, that he had not been provided a competency hearing, effective assistance of counsel, and the Rule 11 colloquy in connection with his guilty plea in 1977. Therefore, the court finds that he had the necessary knowledge of relevant facts to bring his claims within the first few years after his 1977 conviction, when the court reporter's tapes would still have been available for transcription. But he waited nearly eighteen years until it became impossible to reconstruct proceedings and respond to the merits of his claims.

Rivers argues that his delay in filing the § 2255 motion should be excused by his lack of legal knowledge. Yet, the court finds no indication that Rivers sought legal help in challenging the 1977 conviction until 1992 at the earliest, at least fourteen years after the conviction. Certainly, he knew much earlier than 1992 that he lacked legal training, but did not take the initiative to seek legal help until years later. Rivers does not argue or offer any evidence whatsoever that he was mentally incompetent to file, or to seek help to file, a § 2255 motion in the years immediately following his 1977 conviction.[9] The court finds no evidence that anyone has attempted to conceal records or documents from Rivers or the court. Thus, the court must also find that Rivers has not demonstrated any force or event outside his control which prevented him from bringing his § 2255 motion earlier. *Cf. Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (to show cause for failing to raise claims in an earlier federal *habeas* petition, pursuant to 28 U.S.C. § 2254, petitioner must demonstrate that some force outside himself prevented him from learning of the facts necessary to bring the claims earlier, although he exercised reasonable diligence to discover such facts); *McCoy v. Newsome,* 953 F.2d 1252 (11th Cir.) (*pro se* status of litigant does not establish viable excuse for failure to bring claim in earlier federal *habeas* petition), *cert. denied,* 504 U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992); *Amadeo v. Zant,* 486 U.S. 214, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988) (concealment of facts by officials may establish viable excuse for failure to bring claim in earlier federal *habeas* petition).

Accordingly, it is the opinion of the court that River' delay in filing his § 2255 motion was unreasonable and that because of his delay, the government is severely prejudiced in its ability to respond to the merits of his claims. *See Oliver, supra.* Therefore, the court finds that the motion to dismiss must be granted under Rule 9(a) of the Rules Governing § 2255 Proceedings and that petitioner's motion for judgment must be denied.

### IV. Discovery Motion and § 1735 Hearing

■ Rivers has also filed a motion for discovery in this § 2255 action, seeking discovery of the missing transcript of his July 1977 plea and sentencing and documentation of a brain wave test performed upon him at

---

8. Indeed, if Rivers had filed a direct appeal of his 1977 conviction and sentence to the United States Court of Appeals for the Fourth Circuit, a transcript would have been ordered immediately after trial in conjunction with the appeal and would now be part of the record.

9. The court has reviewed other proceedings in this court involving Rivers, such as an escape conviction, later criminal charges and parole revocations; in those records, the court finds no indication that the issue of his competency was ever raised in any of those proceedings.

the Salem VA. As indicated above, the court and the Office of the United States Attorney have been unable to locate these records. Thereafter, Rivers filed a motion for a hearing to determine the content of these missing records, pursuant to 28 U.S.C. § 1734. Because the United States is a party to this § 2255 action, any determination regarding such a hearing must be made under 28 U.S.C. § 1735 which requires:

> Whenever the United States is interested in any lost or destroyed records or files of a court of the United States, the clerk of such court and the United States attorney for the district shall take the steps necessary to restore such records or files, under the direction of the judges of such court.

The court interprets this provision to require that only where a judge of the district court so directs is a hearing to restore the records necessary. Inasmuch as petitioner seeks the records from his 1977 trial only to support his § 2255 challenge to the validity of that conviction and inasmuch as the court has already determined that his § 2255 motion must be dismissed under Rule 9(a), the court also finds unwarranted any hearing to restore the 1977 trial and sentencing records or the documentation of the alleged brain wave test. Accordingly, Rivers' motion for discovery and his motion for hearing, pursuant to 28 U.S.C. §§ 1734 and 1735, must be denied. An appropriate order shall be entered this day.

### ORDER

In accordance with the written memorandum opinion entered this day, it is hereby

ADJUDGED AND ORDERED

(1) that respondent's motion to dismiss this motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255, shall be and hereby is GRANTED;

(2) that petitioner's motion for judgment on his § 2255 motion, his motion for discovery, his motion for hearing pursuant to 28 U.S.C. § 1734, and his motion to strike the June 24, 1977 psychological report shall be and hereby are DENIED; and that this action is stricken from the active docket of this court.

The petitioner is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).