In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1103

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAZA BOKHARI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:04-cr-00056-RTR-1 — **Rudolph T. Randa**, *Judge.*

ARGUED MAY 20, 2014 — DECIDED JULY 3, 2014

Before KANNE, TINDER, and HAMILTON, *Circuit Judges.*

TINDER, *Circuit Judge.* Raza Bokhari appeals the denial of his pretrial motion to dismiss the indictment and quash the arrest warrant pending against him in the United States District Court for the Eastern District of Wisconsin. This interlocutory appeal is complicated by the fact that Bokhari currently resides in Pakistan. Efforts to extradite him have so far been unsuccessful, and he apparently has no intention of returning to the United States. As explained below, we now

dismiss part of Bokhari's appeal as an improper attempt to seek interlocutory review of a non-final pretrial order. We otherwise affirm the district court's decision, albeit on different grounds.

## I  Background

Bokhari is a dual citizen of the United States and Pakistan. In 2000 he resided in Wisconsin, where he had lived for more than a decade. Over the next two years, Bokhari allegedly conducted a fraudulent scheme with his brothers, Haider and Qasim Bokhari, in which the trio bilked a nonprofit entity that administered the E-Rate Program, a federal project designed to improve internet and other telecommunications services for disadvantaged schools, out of an estimated $1.2 million. According to the government, the brothers used Raza Bokhari's experience with the E-Rate program to fabricate and submit fraudulent work invoices and related documents claiming unearned compensation for work on various schools' infrastructures that was never performed. In 2001, as the alleged fraud was still ongoing, Bokhari moved to Pakistan, where, according to the government, he continued directing the illegal scheme.

In September of 2004, a federal grand jury in the Eastern District of Wisconsin returned an eight-count superseding indictment charging the three brothers with mail fraud, money laundering, and related charges. Haider and Qasim Bokhari each pleaded guilty and were sentenced to more than five years in prison.

The government then submitted an extradition request to Pakistan in 2005, seeking Bokhari's return to United States

custody.[1] Bokhari contested the request in Pakistani court, and the Pakistani government sent an attorney to plead the case for extradition. The United States provided an affidavit from Qasim Bokhari implicating Raza, along with a copy of the relevant federal indictment and a number of affidavits from 1) the non-profit the brothers defrauded, 2) the prosecutor handling the case, and 3) agents of the FBI and the IRS. Bokhari responded, as relevant here, that the United States' evidence was inadmissible because he was not able to cross-examine any of the affiants. In 2007, following a hearing, a Pakistani magistrate declined to authorize extradition, finding that the United States had failed to present a prima facie case of Bokhari's guilt. The magistrate discounted the indictment and affidavits from government officials as mere accusations that relied entirely on Qasim Bokhari's affidavit for factual support. And the magistrate characterized Qasim's affidavit as "the uncorroborated testimony of an accomplice," which was insufficient to support a conviction under Pakistani law. The Pakistani judge also speculated that Qasim Bokhari could have secured an early release in exchange for his testimony, in which case he would be an interested witness.

---

[1] Extradition between the United States and the Islamic Republic of Pakistan is governed by the terms of the 1931 U.S.-U.K. Extradition Treaty. 47 Stat. 2122. *See* text following 18 U.S.C. § 3181 (listing extradition agreements); *Kasi v. Angelone*, 300 F.3d 487, 493 n.2 (4th Cir. 2002). The treaty applies to Pakistan through its former colonial sovereign, the United Kingdom; as the Pakistani magistrate noted, Pakistan has notified its consent to the treaty. However, the United States has informed us that, in practice, Pakistan has not extradited a fugitive to this country in a fraud-related matter since 1984, and has not extradited anyone to the United States since 2008.

The Pakistani magistrate instructed the United States that it would have to "further consolidate and substantiate its case to make a prima facie case for the extradition of the accused." The magistrate indicated that the United States should provide Pakistan with bank records reflecting the transactions underlying the alleged fraud, along with other evidence, relating to such topics as 1) Haider Bokhari's role in the scheme, 2) the possible involvement of Bokhari's mother and sister-in-law, and 3) any potential leniency the United States planned to show Qasim Bokhari in exchange for his testimony. Absent such evidence, the court refused to order Raza Bokhari's extradition. Pakistan later informed the United States that an appeal of the magistrate's decision was underway, but since then communication between the two nations regarding the case, and cooperation regarding extradition in general, appears to have broken down.

In 2009, the United States secured a "red notice" through Interpol, retroactively effective starting in 2004, which notifies all member states that they should arrest Bokhari should he enter their jurisdiction. (The government apparently intended to obtain the red notice in 2004, but for some reason no such notice was issued.) Because Bokhari has avoided travelling outside of Pakistan, the red notice has not aided the government's efforts in returning Bokhari to the United States and compelling him to stand trial.

Back in the United States, Bokhari's attorneys filed a motion on his behalf in 2013, seeking to dismiss the indictment and quash the arrest warrant pending against him, on two grounds. First, Bokhari argued that the district court should have dismissed the indictment because the Pakistani magistrate had found insufficient admissible evidence to sustain a

prima facie case against him, and that concerns of international comity require American courts to treat that decision as a finding that the United States lacked probable cause to indict and try him under Federal Rule of Criminal Procedure 5.1(f). Second, Bokhari contended that the government had violated his Sixth Amendment right to a speedy trial.

The magistrate judge in the Eastern District of Wisconsin recommended denying the motion on its merits. The magistrate judge found that Bokhari himself caused any delay in his trial by living outside the country, and that he did not actually desire a speedy trial and therefore could not demonstrate prejudice. He further reasoned that, even though the Pakistani magistrate had found the case against Bokhari insufficient to justify his extradition, principles of international comity did not require the federal district court to dismiss the indictment. The magistrate judge noted that the federal indictment served as a formal finding of probable cause justifying Bokhari's trial, and concluded that this finding could not be disturbed by a Pakistani extradition decision that made only a prima facie, non-preclusive judgment as to the government's case.

The district court did not accept the magistrate judge's recommendation, and instead denied Bokhari's motion without prejudice pursuant to the fugitive disentitlement doctrine. Although the magistrate judge had recommended against applying the doctrine, the district court found that Bokhari was a fugitive fleeing from prosecution, and that he therefore was not entitled to an adjudication of any motion before the court. *See Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970) (status as a fugitive "disentitles the defendant to call

upon the resources of the Court for determination of his claims").

Bokhari filed this appeal of the district court's order denying his motion. In his opening brief he raises the same two arguments he pressed before the district court. In response, the government urges this court to dismiss the appeal for lack of jurisdiction because the district court's decision is not a final order and is not otherwise appealable under the collateral order doctrine. Failing that, the United States requests that this court affirm the denial of Bokhari's motion under the fugitive disentitlement doctrine, or else hold that his two arguments for relief are meritless.

## II   Discussion

### A.  Jurisdiction

The government contends that this court lacks jurisdiction over Bokhari's appeal because the district court's order was not final: an entire trial is pending, should Bokhari ever be returned to the United States. *See* 28 U.S.C. § 1291. Bokhari claims jurisdiction exists under Section 1291, on the grounds that the district court's denial of his motion is an appealable collateral order or else satisfies the practical finality doctrine.

Under the collateral order doctrine, in order for a non-final order to be reviewable, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). The "doctrine of practical finality" is a "close cousin of the collateral order exception." *Travis v. Sullivan*, 985 F.2d 919, 922

(7th Cir. 1993). The doctrine provides that, in specific con-
texts, an order may be treated as final "if it is final for all
practical purposes," *id.* at 921, and if it is also "effectively
unreviewable after a resolution of the merits of the litiga-
tion." *Id.* at 922; *see id.* at 925 (Manion, J., dissenting) ("The
doctrine of practical finality applies where the district court
resolves a legal issue in such a way that judgment becomes,
as a practical matter, the dispositive order in the case.").
*Travis* involved a district court's remand of a social security
disability claim to an administrative law judge. Barring an
interlocutory appeal, the only way for the Secretary to obtain
review of the remand order would have been to violate it
and open himself to a contempt finding. *Id.* at 923. The court
"rejected this 'cumbersome, unseemly route for obtaining
appellate review'" in favor of hearing the case at hand. *Id.*
(quoting *Crowder v. Sullivan*, 897 F.2d 252, 253 (7th Cir.
1990)).

Against that legal backdrop, we now examine Bokhari's
two claims to determine if they fall within either of these ex-
ceptions to the final judgment rule.

### 1. The Speedy Trial Claim

We lack jurisdiction to hear Bokhari's Sixth Amendment
speedy trial claim. Bokhari's argument to the contrary col-
lides squarely with the Supreme Court's decision in *United
States v. MacDonald*, in which the Court "decline[d] to exac-
erbate pretrial delay by intruding upon accepted principles
of finality to allow a defendant whose speedy trial motion
has been denied before trial to obtain interlocutory appellate
review." 435 U.S. 850, 863 (1978). The Court reasoned that
the collateral order doctrine did not encompass an appeal of
a rejected Sixth Amendment speedy trial claim before trial

because "a denial of a motion to dismiss on speedy trial grounds does not represent a complete, formal and, in the trial court, a final rejection of the defendant's claim." *Id.* at 858 (citation and internal quotation marks omitted). Indeed, "[t]he resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case … . [M]ost speedy trial claims, therefore, are best considered only after the relevant facts have been developed at trial." *Id*.

*MacDonald*'s holding and reasoning apply with full force to Bokhari's Sixth Amendment speedy trial claim. The district court's order is therefore not an appealable collateral order as to that issue. Nor is it practically final, because speedy trial claims can be, and preferably are, resolvable after trial. Bokhari argues that the district court's order is final as a pragmatic matter because, he confidently states, he will never return to the United States and the government has given up attempting to extradite him. But even if Bokhari's factual assertions are true,[2] it would not change the fact that the scope and circumstances of Bokhari's speedy trial claim—for example, the length of the delay, whether and to what extent Bokhari was prejudiced by it, and which party bears responsibility—cannot become clear unless and until a trial is held. The district court's denial of his speedy trial

---

[2] The United States contends that, as far as it can tell, the Pakistani magistrate's decision is currently under appeal, and it cites the Interpol red notice as evidence that it has not given up trying to extradite Bokhari. In response, Bokhari represented that the appeal has already been rejected, and points to the fact that seven years have passed since the Pakistani magistrate's decision. In any event, we need not resolve this dispute to decide this case.

claim was therefore not final, but rather "inconclusive." *Id.* at 859 (quotation marks omitted). As a result, we lack jurisdiction to review it.[3]

### 2. The Comity Claim

This court does have jurisdiction, however, to review Bokhari's claim that comity with Pakistani courts requires dismissal of his indictment. In *United States v. Kashamu*, 656 F.3d 679 (7th Cir. 2011), this court considered an analogous case involving a Nigerian citizen who successfully resisted extradition from England. Kashamu, like Bokhari, moved to dismiss his indictment pursuant to the foreign court's decision not to extradite. The *Kashamu* court found that it had jurisdiction to review this claim under the collateral order doctrine. It likened Kashamu's position to that of a defendant invoking his right against double jeopardy, which does fall squarely within the doctrine. *See Abney v. United States*, 431 U.S. 651, 658–60 (1977). The right against double jeopardy "protects a defendant against being retried, and not just against being convicted." *Kashamu*, 656 F.3d at 682. Similarly, "Kashamu [wa]s asserting a right not just not to be convicted, but not to be tried, and such a right would be lost forever if review were postponed until final judgment." *Id.* at 681.

---

[3] Similarly, we lack jurisdiction to hear Bokhari's appeal regarding Rule 48(b) of the Federal Rules of Criminal Procedure, which authorizes the district court to dismiss an indictment due to "unnecessary delay" in bringing the defendant to trial. This rule is "driven by the same general considerations as the Sixth Amendment" speedy trial right, *United States v. Ward*, 211 F.3d 356, 362 (7th Cir. 2000) (citation and internal quotation marks omitted), and Bokhari invokes it as a functionally equivalent alternative to his Sixth Amendment argument. Hearing his appeal on that ground would therefore implicate the same jurisdictional obstacles outlined in *MacDonald*.

The district court's denial of Kashamu's motion therefore 1) conclusively determined that he would have to stand trial, 2) stood completely separate from the merits of that trial, and 3) would have been effectively unreviewable if Kashamu had been required to wait until trial to appeal it.

The same analysis applies to this case. Bokhari essentially seeks relief from three consequences of his indictment: his continued inability to travel due to the red notice, the overhanging threat of extradition, and the prospect of the trial that would inevitably follow. As in *Kashamu*, he seeks a remedy on the ground that a foreign court has undermined the legitimacy of his indictment. The district court's refusal to dismiss the charges conclusively denies him that relief, and we need not comment on the merits of his guilt or innocence to review that decision. Finally, if we wait until after trial to hear Bokhari's appeal, his claim to dismiss the indictment without trial will be moot and unreviewable. The comity claim is therefore appealable as a collateral order under *Kashamu*.

It is true that the district court denied Bokhari's motion without prejudice under the fugitive disentitlement doctrine, but this is analogous to one of those rare instances "where a dismissal without prejudice is effectively final" because "it is impossible for the plaintiff to amend the filing to remedy the problem that prompted the dismissal." *Dolis v. Chambers*, 454 F.3d 721, 723 (7th Cir. 2006) (citation and quotation marks omitted). By denying the motion without prejudice, the district court did keep open the possibility that Bokhari could return, or be extradited, to the United States and then have his motion to dismiss the indictment heard in the district court. But to do so, Bokhari would first have to give up his

right not to return (or to resist extradition) to this country. *See Kashamu*, 656 F.3d at 682–83 (dismissal of the indictment "protects [Kashamu] from extradition, the immediate sequel to which would be a criminal trial."). Moreover, if Bokhari ever does set foot in this country, either through extradition or free will, his comity argument would essentially vanish. It would certainly not offend Pakistan for the United States to try one of its own citizens within its own territory, for alleged crimes committed in this country. Bokhari would therefore be unable to use the comity argument to avoid trial. As in *Kashamu*, we are confident that "[i]f the United States succeeds in extraditing [Bokhari] it will put him on trial" regardless of any comity argument he makes. *Id.* at 682. The district court's decision therefore conclusively determined that issue, subject to our review.

This is a rare case. Most fugitive disentitlement decisions handed down by district courts involve defendants who have since been caught and returned; these rulings are typically entered with prejudice.[4] *See, e.g., United States v. Morgan*, 254 F.3d 424, 426 (2d Cir. 2001). But we are persuaded on these facts that Bokhari must be able to appeal the district court's decision to invoke the doctrine, because otherwise an erroneous application would be reviewable only through use of an extraordinary writ. In the case of *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009), the district court held the defend-

---

[4] Originally, *Kashamu* was an exception. The district court initially dismissed the defendant's motion without prejudice pursuant to the fugitive disentitlement doctrine, *United States v. Kashamu*, 656 F. Supp. 2d 863, 868 (N.D. Ill. 2009), but then reconsidered its decision and denied the motion on the merits, No. 94-CR-172, 2010 WL 2836727 (N.D. Ill. July 15, 2010).

ant's motion in abeyance pending his arraignment, thereby requiring the defendant to seek mandamus. We think it is unnecessary to resort to that writ to obtain this court's review of a decision that is, for all intents and purposes, final.

The government responds that this case is distinguishable from *Kashamu* because Kashamu argued that the foreign court decision had preclusive effect on the American courts, whereas Bokhari merely asks this court to respect the Pakistani magistrate's judgment out of a concern for comity. But the *Kashamu* court decided it had jurisdiction before determining whether the English magistrate's decision had any preclusive effect. 656 F.3d at 683 ("So we have appellate jurisdiction and turn to the question whether it is true as the government argues that a ruling rejecting a request for extradition can never have collateral estoppel effect."). Indeed, the court found in that case that the extradition ruling lacked collateral estoppel effect, but it still retained jurisdiction. As far as jurisdiction was concerned, "[a]ll that matters is that if [Kashamu's] defense of collateral estoppel is sound, it … protects him from extradition, the immediate sequel to which would be a criminal trial." *Id.* at 682–83. Likewise, if Bokhari's comity claim is sound, he will be able to avoid trial because the indictment would be dismissed. The possibility that Bokhari's claim may be less sound than Kashamu's is no bar to our jurisdiction. We therefore exercise jurisdiction over this portion of Bokhari's appeal.[5]

---

[5] At oral argument, Bokhari contended that this court could hear his entire appeal—involving both the comity and speedy trial claims—if we had jurisdiction over either issue. He suggested that he is appealing a single order denying his motion, and that he is therefore entitled to appeal the whole order if he can appeal any of it. But there is no good rea-

### 3. Mandamus

One final jurisdictional issue remains. Bokhari perfunctorily requests that, in the event this court finds appellate jurisdiction lacking as to either claim, we treat his appeal as a petition for a writ of mandamus pursuant to the All Writs Act. *See* 28 U.S.C. § 1651. We have already decided to exercise jurisdiction over the comity claim, so a writ of mandamus is unnecessary for that purpose. As to the Sixth Amendment speedy trial claim, *MacDonald* bars us from exercising mandamus jurisdiction, for the same reasons we have already discussed. The Supreme Court has instructed that Sixth Amendment speedy trial claims are best left until after trial. *MacDonald*, 435 U.S. at 858. As such, Bokhari cannot demonstrate that he has a "clear and indisputable" right to call upon our mandamus jurisdiction so that we may review the pretrial denial of his claim. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81(2004). And in light of his posttrial appeal option, Bokhari also cannot establish that he lacks adequate alternative means of obtaining relief, or that the circumstances of his case justify the invocation of the "extraordinary remedy" of mandamus. *Id.*

---

son why the manner in which the district court organizes its orders should affect this court's jurisdiction. The speedy trial and comity claims are distinct, and we do not consider them to be the type of "inextricably intertwined" issues that could trigger the "narrow doctrine" of pendent appellate jurisdiction. *Abelesz v. Erste Grp. Bank AG*, 695 F.3d 655, 660 (7th Cir. 2012).

### B.  The Fugitive Disentitlement Doctrine

We now arrive at the district court's basis for denying Bokhari's motion to dismiss the indictment. The court held that Bokhari was a fugitive, and that his refusal to submit to the jurisdiction of the district court "disentitles [him] to call upon the resources of the Court for determination of his claims." *Molinaro*, 396 U.S. at 366. We have recognized that the doctrine is a "discretionary device." *Gutierrez-Almazan v. Gonzales*, 453 F.3d 956, 957 (7th Cir. 2006). The Supreme Court has indicated that, when a fugitive flees while district court proceedings are pending, "it is the District Court that has the authority to defend its own dignity, by sanctioning an act of defiance that occurred solely within its domain." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 246 (1993). The government therefore urges us to adopt an abuse of discretion standard in judging whether the district court properly applied the doctrine. *See Morgan*, 254 F.3d at 426–27 (finding no abuse of discretion).

What complicates this issue, however, and what convinced the magistrate judge to recommend against the district court's invocation of the doctrine, is the question of whether Bokhari meets the legal definition of a fugitive. Bokhari argues that he is not a fugitive because he left the United States a few years before he was indicted. He analogizes his case to *In re Hijazi*, 589 F.3d at 412–14, where the defendant had made only one unrelated visit to the United States. In that case we held that the fugitive disentitlement doctrine did not apply. *Id.*

The government persuasively responds that Bokhari had lived in the United States for over a decade before leaving for Pakistan, possibly in anticipation of an indictment. Un-

like Hijazi, whose prosecution posed significant extraterritoriality concerns, Bokhari should have understood that, as a citizen of the United States who had lived in this country for many years, he had an obligation to return to stand trial. And the United States cites authority for the proposition that, in the context of a speedy trial claim, "[a] person can be said to be a fugitive when, while abroad, they learn that they are under indictment and make no effort to return to the United States to face charges." *United States v. Blanco*, 861 F.2d 773, 779 (2d Cir. 1988). For statute of limitations purposes, this court has held that a person becomes a fugitive if he flees the jurisdiction with the intent of avoiding arrest or prosecution. *United States v. Marshall*, 856 F.2d 896 (7th Cir. 1988). And the term "fugitive" in federal extradition statutes "has been held consistently to require only proof of absence from the indicting jurisdiction, regardless of the defendant's intent." *Id.* at 898.

Nevertheless, we elect to reach the merits of Bokhari's comity claim, and will not opine on the fugitive disentitlement issue. Identifying fugitives for purposes of the disentitlement doctrine can present complicated legal and factual questions. As the United States has explained, the term "fugitive" may take on subtly different meanings as it is used in a variety of legal contexts. Reasonable minds can disagree, and have disagreed, about how the term applies in the case at hand. Instead of deciding that contested issue, we will follow the example set by the Second Circuit in *United States v. Baccollo*, 725 F.2d 170, 172 (2d Cir. 1983), in which that court declined to reject an appeal pursuant to the disentitlement doctrine and instead reached the merits because "the appeal is so plainly frivolous that we prefer to dispose of the case

on that ground."[6] Likewise, we "see no reason to risk the possibility of error" by parsing out Bokhari's intent in leaving the jurisdiction, or the legitimacy of his attempts to stay there given the United States' failure to extradite him. *Id.*; *see Dye v. United States*, 360 F.3d 744, 750 (7th Cir. 2004) (This court may "affirm on any basis identified in the record that was argued below.").[7] We therefore proceed to the merits.

### C. Merits of the Comity Claim

Bokhari argues that the district court should have dismissed the indictment out of concern for international comity. He compares the denial of extradition to a finding of no probable cause under Federal Rule of Criminal Procedure 5.1. And he cites *Kashamu* for the proposition that a denial of extradition "is like a magistrate's ruling that there isn't probable cause to hold a person." 656 F.3d at 685.

---

[6] Granted, in *Baccollo* the Second Circuit was deciding whether to invoke the disentitlement doctrine itself, not reviewing a district court's use of it. Nevertheless, we find that the discretionary nature of the doctrine permits us to avoid an examination of the term "fugitive," as applied to this case.

[7] To be clear, in reaching the merits, we do not in any way suggest that the district court did err in finding that Bokhari was a fugitive, or that it abused its discretion in applying the doctrine to him. Nor do we opine on what the appropriate standard of review of that aspect of the district court's decision would be. We instead rely on its observation that "[t]he fugitive disentitlement doctrine stands for the proposition that those who flee from judicial process may not benefit from it." *United States v. Bokhari*, No. 04-CR-56, --- F. Supp. 2d --- 2014 WL 37349, at *1 (E.D. Wis. Jan. 6, 2014). As we will see, Bokhari will receive no benefit from filing his motion to dismiss the indictment.

This claim has no merit. The problem with Bokhari's argument is that *Kashamu* does not support his cause; in fact, it dooms it. For although the court in that case did liken a denial of extradition to a probable cause determination, and although it did note that "[c]omity is a doctrine of deference based on respect for the judicial decisions of foreign sovereigns," *id.* at 683, Kashamu's attempts to dismiss the indictment against him failed. The fatal flaw in his case, as in this one, was a lack of preclusive effect. Like an initial probable cause hearing, a denial of extradition does not prevent the government from demonstrating probable cause under a different record in a different proceeding. *Id.* at 687–88; *see* Fed. R. Crim. P. 5.1(f) (a magistrate judge's finding of no probable cause "does not preclude the government from later prosecuting the defendant for the same offense."). And the United States did just that by indicting Bokhari. The fact that the Pakistani magistrate's denial of extradition came after the indictment in no way undermines the grand jury's finding that there was sufficient evidence to go to trial. "The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 134 S. Ct. 1090, 1098 (2014) (discussing "the inviolable grand jury finding" of probable cause). Rule 5.1(a) of the Federal Rules of Criminal Procedure underscores that point: a "magistrate judge must conduct a preliminary [probable cause] hearing unless … the defendant is indicted." Because Bokhari was already indicted, no additional probable cause hearing was necessary, and the results of such a later hearing cannot undo the grand jury's work.

Bokhari does not even attempt to argue that the Pakistani magistrate's ruling had preclusive effect under Pakistani law

(or under United States law, if one accepts Bokhari's analogy to a pretrial finding of no probable cause). Indeed, the Pakistani magistrate ruled only that the United States must "further consolidate and substantiate its case" against Bokhari. This statement strongly indicates that the magistrate did not consider this ruling to be the final word in the extradition proceeding. Bokhari is therefore essentially asking that this court "give preclusive effect to the foreign court's finding as a matter of comity" with Pakistan, *Kashamu*, 656 F.3d at 683, even though the finding is not preclusive on its own terms. That makes no sense. We therefore affirm the district court's denial of Bokhari's motion.

### III   Conclusion

Bokhari's appeal regarding the speedy trial claim is DISMISSED for lack of jurisdiction. The district court's decision is otherwise AFFIRMED.