[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10016

_____

D.C. Docket No. 3:05-cr-00017-RV-MD-3

In re: MICHAEL REESE COFFMAN,

Petitioner.

_____

On Petition for a Writ of Mandamus
to the Northern District of Florida

_____

Before WILSON, PRYOR, and ROSENBAUM, Circuit Judges.

PRYOR, Circuit Judge:

This petition requires us to decide whether a federal prisoner may apply for "an order establishing" a "lost or destroyed record of [a] proceeding in [a] court," 28 U.S.C. § 1734, when the prisoner failed to allege any legal need for the record. A jury convicted Michael Reese Coffman of one count of conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine. 21 U.S.C. § 841(a)(1); (b)(1)(A)(viii). After his unsuccessful direct appeal and collateral attack of his sentence, 28 U.S.C. § 2255, Coffman has returned to our Court because he wants—for no apparent reason—a copy of an

exhibit from his trial. The clerk of the district court destroyed the exhibit from Coffman's closed case in accordance with local rules, but Coffman later applied to the district court to "establish" the record, *id.* §§ 1734, 1735. The district court denied the application, and Coffman filed a petition for a writ of mandamus in our Court to require the district court to hold a hearing to establish the record. After briefing and oral argument, we deny Coffman's petition because he failed to allege any need for the record in any pending or contemplated legal proceeding.

## I. BACKGROUND

A federal grand jury indicted Coffman on one count of conspiracy to manufacture and to possess with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine. 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846. Because the United States failed to introduce any evidence at trial that Coffman intended to manufacture the drug, the district court suggested that it redact "to manufacture" from the indictment before providing it to the jury for deliberations. The parties agreed, and the court redacted the indictment, marked it as Court Exhibit 2, and gave it to the jury.

The jury returned a guilty verdict against Coffman on the single count of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, and the district court sentenced him to life imprisonment. We affirmed his sentence on direct appeal, *United States v. Coffman*, 188 F. App'x 945

2

(11th Cir. 2006), and the Supreme Court denied his petition for a writ of certiorari, *Coffman v. United States*, 549 U.S. 1235, 127 S. Ct. 1316 (2007). Coffman then filed a motion to vacate his sentence, 28 U.S.C. § 2255, which the district court denied. We denied his request for a certificate of appealability, and the Supreme Court denied his petition for a writ of certiorari, *Coffman v. United States*, 558 U.S. 1061, 130 S. Ct. 772 (2009). Coffman filed a motion for reconsideration, Fed. R. Civ. P. 60(b), which the district court denied, and we again denied his request for a certificate of appealability. *See* 28 U.S.C. § 2255(h).

Seven months later, Coffman wrote a letter to the clerk of the district court requesting a copy of the redacted indictment from his trial. But the mandate had issued more than 30 days before Coffman sent his letter, and the clerk had disposed of the record according to a local rule. The clerk advised Coffman that the record was "not available" because "Northern District of Florida Local Rule 5.2 calls for the disposition of exhibits thirty days after the mandate on direct appeal."

Unsatisfied with the response from the clerk, Coffman applied for an "order establishing the lost or destroyed record." 28 U.S.C. §§ 1734, 1735. The district court denied the application and stated that "Government Exhibit 2 (a quantity of methamphetamine) was returned to the [Drug Enforcement Agency], as customary." The district court apparently mistook *Government* Exhibit 2, which related to the quantity of drugs, for *Court* Exhibit 2, which was the redacted

3

indictment. Coffman then petitioned this Court for a writ of mandamus to require

the district court to hold a hearing to establish the record. A judge of this Court

appointed counsel to represent Coffman.

## II. STANDARD OF REVIEW

Because a writ of mandamus is an action against the district court judge,

"the remedy . . . is a drastic one" that "only exceptional circumstances, amounting

to a judicial usurpation of power, will justify." *In re Moody*, 739 F.3d 1289, 1296

(11th Cir. 2014). We will issue a writ only if a petitioner establishes that he "ha[s]

no other adequate means to attain the relief he desires" and that his right to the

issuance of the writ is "clear and indisputable." *Cheney v. U.S. Dist. Ct. for the*

*Dist. of Columbia,* 542 U.S. 367, 380–81, 124 S. Ct. 2576, 2586–87 (2004)

(internal quotation marks and citations omitted). We also "must be satisfied that

the writ is appropriate under the circumstances." *Id.* at 381, 124 S. Ct. at 2587.

## III. DISCUSSION

We decline to issue a writ of mandamus to the district court to establish the

lost or stolen record because Coffman has no right to relief under sections 1734 or

1735. Our Court has never interpreted those sections, but the plain text and

statutory context make clear that those sections are evidentiary rules used to

recreate a record for a pending or contemplated judicial, administrative, or other

legal proceeding. Section 1734 prescribes a process for a court to establish a lost or

4

destroyed record when an interested person needs the record for some legal proceeding, but Coffman has alleged no such need. And section 1735 applies in only two limited circumstances, neither of which is present here.

As an initial matter, Coffman filed his application under both sections 1734 and 1735, but he clearly falls outside of the ambit of section 1735. That section applies only in two circumstances: when the United States is a party to the matter and a certified copy of the record is available, 28 U.S.C. § 1735(a), or when the United States is the interested party seeking to establish the record, *id.* § 1735(b). Even though the United States prosecuted Coffman at his trial, nothing in the record suggests that a certified copy of the redacted indictment is available or that the United States is interested in establishing it.

To evaluate whether Coffman's request falls within the scope of section 1734, we begin with the text of the section. *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S. Ct. 1534, 1537 (1982) ("As in all cases involving statutory construction, our starting point must be the language employed by Congress . . . ." (internal quotation marks omitted)). Section 1734 comprises two subsections. Subsection (a) provides that "[a] lost or destroyed record of any proceeding in any court of the United States may be supplied on application of any interested person not at fault, by substituting a copy certified by the clerk of any court in which an authentic copy is lodged." 28 U.S.C. § 1734(a). This subsection does not apply to

Coffman because the clerk of the court in which the authentic copy was lodged has since disposed of the record. Subsection (b) provides the process for establishing a lost or destroyed record by verified application, service on interested persons, and a hearing:

> Where a certified copy is not available, any interested person not at fault may file in such court a verified application for an order establishing the lost or destroyed record.
>
> Every other interested person shall be served personally with a copy of the application and with notice of hearing on a day stated, not less than sixty days after service. . . .
>
> If, after the hearing, the court is satisfied that the statements contained in the application are true, it shall enter an order reciting the substance and effect of the lost or destroyed record. Such order, subject to intervening rights of third persons, shall have the same effect as the original record.

*Id.* § 1734(b). Coffman contends that this subsection entitles him to a hearing.

Coffman argues that subsection (b) does not require him to provide a reason why he needs the establishment of the record, but he misinterprets the text as a whole. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("The text must be construed as a whole[,] . . . consider[ing] the entire text, in view of its structure and of the physical and logical relation of its many parts."); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S. Ct. 1811, 1818 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language

6

and design of the statute as a whole."). The phrases "interested person," "subject to the intervening rights of third persons," and "shall have the same effect as the original record," limit the availability of that process to persons who need the record for a pending or contemplated legal proceeding.

Coffman is not an "interested person" because he fails to allege a "reasonable interest" in establishing the record. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256, 124 S. Ct. 2466, 2478 (2004). In *Intel Corp.*, the Supreme Court interpreted the phrase "interested person" in the context of another section, 28 U.S.C. § 1782, which is in the same title of the United States Code as section 1734. That section permits an "interested person" to apply for the assistance of the United States judiciary in a foreign tribunal. *Id.* The Supreme Court ruled that the person who "triggered a European Commission investigation" was an "interested person" because that person played a "significant role in the process" of the foreign tribunal. *Intel Corp.*, 542 U.S. at 256, 124 S. Ct. at 2478. The Court observed that "litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782" and that, "[g]iven the[] participation rights" of the person who triggered the complaint, he "possesse[d] a reasonable interest in obtaining judicial assistance, and therefore qualifie[d] as an 'interested person' within any fair construction of that term." *Id.* (alterations and internal quotation marks omitted). That interpretation of

7

"interested person" informs our interpretation of the same phrase in section 1734. Scalia & Garner, *supra*, at 170 ("A word or phrase is presumed to bear the same meaning throughout a text . . . ."). Although Coffman, as the defendant, might be "interested" in his redacted indictment in the colloquial sense of the word, he does not have a reasonable interest in *establishing* the record through a hearing in the district court. His counsel acknowledged at oral argument that "the record is devoid" of the reason why Coffman wants the record, and she also "do[es]n't know what he wants it for." Without a present need for the record in a pending or contemplated legal proceeding, Coffman cannot invoke the process to establish the record.

The phrase "subject to intervening rights of third persons" and the command that the order establishing the record "shall have the same effect as the original record," 28 U.S.C. § 1734(b), also contemplate that the request is made in conjunction with a pending or contemplated legal proceeding. Third persons can assert "intervening rights" only in the context of some sort of legal proceeding. And the whole point of the hearing is to establish the missing record so that the established record can carry "the same effect" as the original record. But if a federal prisoner could request the document for no other reason than to satisfy his idle curiosity, then there would be no proceeding in which to give the established record any "effect." To give meaning to these terms, we interpret section 1734 to

apply only to persons who need the record for a pending or contemplated legal proceeding.

The statutory context further persuades us that section 1734 requires the applicant to allege a need for the record in some legal proceeding. "[I]t is our role to make sense rather than nonsense out of the *corpus juris*." *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101, 111 S. Ct. 1138, 1148 (1991); *see also* Scalia & Garner, *supra*, at 252–53 ("Statutes *in pari materia* are to be interpreted together, as though they were one law."); *id.* at 253 ("Part of the statute's context is the *corpus juris* of which it forms a part . . . ."). And the location of section 1734 in the United States Code confirms that it is a rule of evidence to be used in the context of a legal proceeding. Congress enacted section 1734 in chapter 115, titled "Evidence; Documentary." Chapter 115 is in part V, titled "Procedure," which is in title 28, titled "Judiciary and Judicial Procedure." Those "title[s] and headings are permissible indicators of meaning." Scalia & Garner, *supra*, at 221; *see United States v. Smith*, 742 F.3d 949, 953 (11th Cir. 2014). They establish that section 1734 provides a "procedure" concerning "documentary evidence," a term defined as "[e]vidence supplied by a writing or other document, which must be authenticated before the evidence is admissible." *Black's Law Dictionary* 637 (9th ed. 2004) ("documentary evidence"). And the neighboring sections in chapter 115 confirm this interpretation. They primarily concern the admission of documents

9

into evidence—e.g., that handwriting samples are admissible, 28 U.S.C. § 1731; that business records are admissible, *id.* §1732; and that certified copies of a bond are prima facie evidence of the execution, filing, and contents of the bond in court, *id.* § 1737. These contextual clues support our interpretation that section 1734 is a rule of evidence, which applicants can invoke if they need a lost or destroyed record for some legal proceeding in which the established record must carry the same effect as the original.

Few courts have interpreted sections 1734 and 1735, but the decisions of the courts that have undertaken the task comport with our interpretation. For example, the Ninth Circuit ruled that section 1734 was a proper avenue to establish a missing court record when that record was necessary to another court proceeding. *See Sec. & Exch. Comm'n v. Worthen*, 98 F.3d 480, 482–83 (9th Cir. 1996) ("If legitimate concerns exist about what the terms of the injunction are . . . or about what the allegations of the complaint were, Worthen's proper recourse in the first instance is to apply in the district court to reconstruct the record. . . . In the absence of any attempt on Worthen's part to follow the statutorily prescribed procedures for establishing the content of the lost record in this case, it was not an abuse of discretion for the district court to deny Worthen's motion for relief." (citing 28 U.S.C. §§ 1734, 1735)). And the Fourth Circuit suggested that a plaintiff use section 1734 to establish a missing record that he needed to support his motion

10

under Rule 60(b). *See In re Burgess*, 28 F.3d 1208, 1208 (4th Cir. 1994) ("Because the record in this case has been lost in the district court, we grant leave to proceed in forma pauperis, but deny the petition for writ of mandamus without prejudice. The petitioner should apply for an order establishing the lost or destroyed records pursuant to 28 U.S.C. § 1734. The petitioner may do this by refiling his Rule 60(b) motion and any supporting papers that he previously filed."); *see also United States v. Scully*, 546 F.2d 255, 270 (9th Cir. 1976), *vacated on other grounds sub nom. United States v. Cabral*, 430 U.S. 902, 902, 97 S. Ct. 1168, 1168 (1977) ("The trial court properly followed 28 U.S.C. § 1735(b) to authenticate the lost affidavit in support of NDC-31. The agent who originally signed the affidavit examined the copy and testified that it appeared to be an accurate copy of the original."); *White v. United States*, No. 07-CV-262, slip op. at 2 n.2 (E.D. Wis. Feb. 9, 2010) (observing that "§ 1735 is used quite sparingly, such as when a court must authenticate evidence whose authenticity is dependent on a evidence that is lost, such as an affidavit"). And other courts have denied applications under section 1734 and 1735 after the related proceedings had ended. *See Garey v. United States*, No. 5:03-CR-83-CDL (M.D. Ga. Nov. 13, 2013) (denying as moot a prisoner's application to establish a lost or destroyed record when the record was relevant to a petition for a writ of certiorari that the Supreme Court had denied); *White*, No. 07-CV-262, slip op. at 2 n.2 ("Nothing . . . demonstrates that § 1735

11

has any relevance to the case at hand, where the court has no reason to make a determination on the evidence, as the court has already dismissed White's petition."); *Rivers v. United States*, 923 F. Supp. 92, 97–98 (W.D. Va. 1996), *aff'd*, 101 F.3d 696 (4th Cir. 1996) ("Inasmuch as petitioner seeks the records from his 1977 trial only to support his § 2255 challenge to the validity of that conviction and inasmuch as the court has already determined that his § 2255 motion must be dismissed under Rule 9(a), the court also finds unwarranted any hearing to restore the 1977 trial and sentencing records or the documentation of the alleged brain wave test."). All of these decisions involved ongoing legal proceedings in which the applicant at some point alleged a need for a court to establish a lost or destroyed record, yet Coffman failed to allege that he needs the redacted indictment for any purpose at all. For that reason, he has no right to relief under sections 1734 or 1735.

## IV. CONCLUSION

We **DENY** Coffman's petition for a writ of mandamus.

12