[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10533
_____

D.C. Docket No. 1:98-cr-00460-DMM-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KHALID A. SHALHOUB,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 28, 2017)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and DUFFEY,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*]Honorable William S. Duffey, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

This appeal presents the questions whether the denial of a motion for special appearance of counsel to seek the dismissal of an indictment on the ground that the defendant is a fugitive from justice is an immediately appealable collateral order and, if not, whether we should issue a writ of mandamus to compel a ruling on the motion to dismiss the indictment without requiring the defendant to appear. In 1997, a grand jury indicted Khalid Shalhoub on one count of international parental kidnapping, 18 U.S.C. § 1204. Shalhoub lives in Saudi Arabia and has never been arrested. In 2015, he moved to have his attorneys specially appear to seek dismissal of the indictment, which the district court denied on the ground that the fugitive disentitlement doctrine prohibits Shalhoub from calling upon the resources of the court without submitting to its jurisdiction. Shalhoub appealed and, alternatively, petitioned for a writ of mandamus. We dismiss his interlocutory appeal for lack of jurisdiction because the order denying his motion is not appealable under the collateral order doctrine. We also deny his petition for a writ of mandamus because Shalhoub has an adequate means to obtain relief—appearance in the district court—and cannot establish that his right to mandamus is clear and indisputable.

## I.  BACKGROUND

Khalid Shalhoub, a citizen and resident of Saudi Arabia, married Miriam Hernandez in Miami in 1985. They divorced four years later. A Florida court granted Shalhoub and Hernandez "full shared parental responsibility" over their

2

only child, Yasmeen, and the court designated Hernandez "as the primary residential parent."

In 1997, a grand jury in the Southern District of Florida indicted Shalhoub on one count of parental kidnapping in violation of the International Parental Kidnapping Crime Act, which makes it a crime to "remove[] a child from the United States . . . with intent to obstruct the lawful exercise of parental rights." 18 U.S.C. § 1204(a). The indictment alleged that Shalhoub removed Yasmeen from the United States to Saudi Arabia "with [the] intent to obstruct the lawful exercise of the parental rights of Miriam Hernandez." Although a magistrate judge issued a warrant for Shalhoub's arrest the day he was indicted, Shalhoub has not been arrested, and the district court listed him a "fugitive from justice."

In 2015, Shalhoub moved to allow his counsel to appear specially and seek dismissal of the indictment. Shalhoub argued that the indictment lacked factual specificity; that the International Parental Kidnapping Crime Act contravenes the laws of Saudi Arabia where the alleged kidnapping occurred; that the Southern District of Florida is an improper venue; that comity cautions against prosecuting conduct that occurred in another country; and that the prosecution violates Shalhoub's right to a speedy trial. He also argued that the district court should not invoke the doctrine that "disentitles [a fugitive] to call upon the resources of [a c]ourt for determination of his claims." *Molinaro v. New Jersey*, 396 U.S. 365, 366

3

(1970). Shalhoub asserted that he is not a fugitive from justice because he was living in Saudi Arabia when he was indicted and did not flee the United States. He also argued that application of the fugitive disentitlement doctrine violates his right to due process because the district court labelled him a "fugitive" without an opportunity to be heard.

The district court denied Shalhoub's motion without prejudice to his right to appear and seek dismissal of his indictment. The district court explained that the fugitive disentitlement doctrine barred Shalhoub's motion because, although Shalhoub was living abroad when indicted, Shalhoub "constructively fle[d] by not deciding to return" to the United States. *United States v. Barnette*, 129 F.3d 1179, 1184 (11th Cir. 1997). The district court also ruled that Shalhoub's right to due process had not been violated and declined to exercise its discretion to circumvent application of the doctrine. Shalhoub appealed and, in the alternative, petitioned for a writ of mandamus.

## II.    STANDARDS OF REVIEW

We review *de novo* whether we have jurisdiction to decide an interlocutory appeal. *Doe No. 1 v. United States*, 749 F.3d 999, 1003 (11th Cir. 2014). "Because a writ of mandamus is an action against the district court judge, the remedy is a drastic one that only exceptional circumstances, amounting to a judicial usurpation of power, will justify." *In re Coffman*, 766 F.3d 1246, 1248 (11th Cir. 2014)

4

(citation and internal quotation marks omitted) (alteration adopted). "We will issue a writ only if a petitioner establishes that he has no other adequate means to attain the relief he desires and that his right to the issuance of the writ is clear and indisputable." *Id.* (internal quotation marks omitted) (alteration adopted). "We also must be satisfied that the writ is appropriate under the circumstances." *Id.* (citation and internal quotation marks omitted).

## III.   DISCUSSION

The fugitive disentitlement doctrine permits a district court to "sanction or enter judgment against parties on the basis of their fugitive status." *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998). This doctrine accounts for "the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing [a] 'fugitive' to use the resources of the courts only if the outcome is an aid to him," and "the need to avoid prejudice to the nonfugitive party." *Barnette*, 129 F.3d at 1183. It also "discourage[s] . . . flights from justice," *id.*, and protects the dignity of the courts, *Ortega-Rodriguez v. United States*, 507 U.S. 234, 241–42, 246 (1993).

Shalhoub argues that application of the doctrine to his motion was error. He requests that we reverse and remand for the district court to rule on the merits of his motion. As an alternative to appellate review, Shalhoub petitions for a writ of mandamus to compel the district court to rule on the merits of his motion.

We divide our discussion in two parts. First, we explain that we lack appellate jurisdiction because the order denying Shalhoub's motion is not immediately appealable under either the collateral order doctrine or the doctrine of marginal finality. Second, we deny Shalhoub's petition for a writ of mandamus because he has an adequate means to obtain relief—appearance in the district court—and his right to the writ is not clear and indisputable.

### A.  *We Lack Appellate Jurisdiction over Shalhoub's Appeal.*

Courts of appeals have jurisdiction over "final decisions of the district courts of the United States." 28 U.S.C. § 1291. The "final judgment rule" prohibits appellate review of a pretrial order in a criminal case "until conviction and imposition of sentence." *Flanagan v. United States*, 465 U.S. 259, 263 (1984). We apply the final judgment rule with "utmost strictness in criminal cases," *id.* at 265, unless the challenged order falls within the collateral order doctrine, which permits appellate review of an interlocutory order that (1) "conclusively determine[s] the disputed question," (2) "resolve[s] an important issue completely separate from the merits of the action," and (3) is "effectively unreviewable on appeal from a final judgment." *Id.* (internal quotation marks and citation omitted).

Although neither convicted nor sentenced, Shalhoub argues that we have jurisdiction under the collateral order doctrine. We disagree. We cannot expand the

6

collateral order doctrine to permit our intermediate review of the denial of Shalhoub's motion.

The only kinds of pretrial orders in criminal cases that the Supreme Court has stated are important enough to fall within this "narrow" exception to the final judgment rule implicate "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Id.* at 265–67 (internal quotation marks and citation omitted). For example, a defendant may immediately appeal the denial of a motion to dismiss an indictment, which contests the legality of prosecution on the basis of double jeopardy, because the defendant challenges "the very authority of the Government to hale him into court to face trial on the charge against him." *Abney v. United States*, 431 U.S. 651, 659 (1977). Likewise, the denial of a motion to dismiss an indictment on the basis that the Speech or Debate clause of the Constitution, U.S. Const. Art. I, § 6, cl. 1, bars the prosecution is immediately appealable because the motion asserts a right not to be "questioned for acts done in either House [of Congress]." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979) (citation omitted). Both double jeopardy and the Speech or Debate clause implicate "a right not to be tried." *Flanagan*, 465 U.S. at 267. The only other order that the Supreme Court has said is immediately appealable under the collateral order doctrine is an order denying a motion to reduce excessive bail, *Stack v. Boyle*, 342 U.S. 1, 6 (1951), because "[t]he issue is finally resolved and is

independent of the issues to be tried, and the order becomes moot if review awaits conviction and sentence." *Flanagan*, 465 U.S. at 266.

The Supreme Court has refused to apply the collateral order doctrine to review the denial of motions alleging violations of grand jury secrecy, *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989), and the right to a speedy trial, *United States v. MacDonald*, 435 U.S. 850, 857 (1978), vindictive prosecution, *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 264 (1982), and insufficient evidence, *Abney*, 431 U.S. at 663. Although important, these matters involve rights that do not "rest[] upon an explicit statutory or constitutional guarantee that trial will not occur," *Midland Asphalt*, 489 U.S. at 801, and they are in "no danger of becoming moot upon conviction and sentence." *Flanagan*, 465 U.S. at 266. In other words, absent the assertion of a right not to be tried or the assertion of a right akin to the right against excessive bail, a defendant must accept the burdens of trial and sentencing before he obtains appellate review of an adverse ruling. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988) ("[L]itigants must abide by the district court's judgments, and suffer the concomitant burden of a trial, until the end of proceedings before gaining appellate review.").

Shalhoub's appeal does not fall within the limited scope of the collateral order doctrine. The denial of Shalhoub's motion for counsel to appear specially implicates neither a "right not to be tried," *Flanagan*, 465 U.S. at 266–67, nor a

right like that against excessive bail. Although Shalhoub asserts that the denial of his motion implicates a panoply of rights—due process, the presumption against extraterritorial application of American law, proper venue, and factual sufficiency in an indictment—none of them "rest[] upon an explicit statutory or constitutional guarantee that trial will not occur." *Midland Asphalt*, 489 U.S. at 801. And the weight of these rights cannot overcome the policy against the exercise of jurisdiction over intermediate orders. *Cf. Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 503 (1989) (Scalia, J., concurring) (explaining that "jurisdictional limitations established by Congress or by international treaty" are "not sufficiently important to overcome the policies militating against interlocutory appeals.").

The denial of Shalhoub's motion is not akin to an "order fixing bail," which is "entirely independent of the issues to be tried," *Stack*, 342 U.S. at 12 (Jackson, J., concurring). The right against excessive bail is a constitutional right, U.S. Const. Amend. VIII, that protects a defendant against bail set higher than reasonably necessary to ensure the defendant's presence at trial, *Stack*, 342 U.S. at 5 (majority opinion). By contrast, so long as he refuses to appear in court, Shalhoub has no right to avoid being labelled a fugitive.

Shalhoub counters that a district court must satisfy the constitutional guarantee of due process *before* it labels him a fugitive, but we disagree. The constitutional guarantee of due process did not entitle Shalhoub to any procedural

protections before the district court labelled him a fugitive. *See Allen v. Georgia*, 166 U.S. 138, 141 (1897) (upholding against due process attack a dismissal of the appeal of an escaped prisoner on fugitive disentitlement grounds); *Clark v. James*, 794 F.2d 595, 598 (11th Cir. 1986) ("[T]here is no constitutional right to notice and hearing prior to dismissal, even when the escapee is captured before dismissal."); *Joensen v. Wainwright*, 615 F.2d 1077, 1079 (5th Cir. 1980) ("[A]n escapee . . . who was at large and unavailable for hearing or receipt of notice at the time of dismissal, . . . has no constitutional right to notice and hearing."). And even if we were to accept Shalhoub's argument that labelling him a fugitive implicates a "constitutionally-protected interest in a person's good name," "[w]here a person's good name . . . is at stake," due process requires only notice and an opportunity to be heard, *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971), which the district court offered Shalhoub and continues to offer him. A fugitive has no more of a freestanding right not to be labelled a fugitive, than a criminal defendant has a freestanding right not to be labelled a defendant. Although the determination that Shalhoub is a fugitive is likely unreviewable after final judgment, Shalhoub enjoys a right to appear in court, to defend himself against the indictment, and to clear his name if he prevails.

Shalhoub urges this Court to follow a recent decision of the Seventh Circuit that held that the denial of a motion to dismiss an indictment was an immediately

appealable order, *United States v. Bokhari*, 757 F.3d 664 (7th Cir. 2014), but that

decision is distinguishable. The Seventh Circuit reasoned that the motion

implicated a right not to be tried because a foreign court had refused to extradite

the defendant. *Id.* at 669–70. Bokhari, a dual citizen of Pakistan and the United

States, was indicted for fraud. *Id.* at 666. Because Bokhari lived in Pakistan at the

time of the indictment, the United States sought extradition, but a Pakistani court

denied the request. *Id.* Bokhari then filed a motion to dismiss the indictment, which

the district court denied. *Id.* at 667. The Seventh Circuit held that the order was

immediately appealable because the district court conclusively determined whether

to defer to the Pakistani court, Bokhari suffered prejudice as a result of the

indictment, and Bokhari asserted a right not to be tried on the ground that

international comity required deference to the decision of the Pakistani court. *Id.* at

669–70. The Seventh Circuit emphasized that "[t]his is a rare case." *Id.* at 670.

"[I]f Bokhari ever does set foot in this country, either through extradition or free

will, his comity argument would essentially vanish." *Id.* Unlike Bokhari, Shalhoub

asserts no alleged right not to be tried. He instead argues that being labelled a

fugitive implicates other rights—for example, due process, the presumption against

the extraterritorial application of American law, and the right to a speedy trial—the

denial of which is insufficient to support our intermediate review. *Will v. Hallock*,

546 U.S. 345, 352 (2006) ("The importance of the right asserted [is] a significant

11

part of [the] collateral order doctrine." (citation and internal quotation marks omitted)). And we need not decide whether we agree with the Seventh Circuit that the decision of a foreign court not to extradite a defendant implicates a right not to be tried.

Shalhoub argues that we can exercise jurisdiction over his appeal under an alternative doctrine, marginal finality, but we disagree. An order that presents a question of "marginal" finality "fundamental to the further conduct of the case" is immediately appealable, *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152, 154 (1964), but the Supreme Court has since limited that doctrine to "the unique facts of [*Gillespie*]," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 477 n.30 (1978), which are distinguishable from this appeal, *see Gillespie*, 379 U.S. at 149–51 (addressing whether the Jones Act provided the exclusive remedy for the alleged wrongful death of a deceased seaman). And we have explained that it is inconsistent for a litigant to assert that we have appellate jurisdiction under the collateral order doctrine, "which requires the issue resolved to be completely *separate* from the merits," *and* the marginal finality doctrine, "which addresses the review of intermediate issues '*fundamental* to the further conduct of the case.'" *See* A*tl. Fed. Sav. & Loan Ass'n of Ft. Lauderdale v. Blythe Eastman Paine Webber, Inc.*, 890 F.2d 371, 377 (11th Cir. 1989) (citation omitted). We decline to exercise appellate jurisdiction on the basis of marginal finality.

12

*B. We Deny the Petition for a Writ of Mandamus.*

The All Writs Act permits us to issue a writ of mandamus to compel a district court to perform a particular duty within its jurisdiction. 28 U.S.C. § 1651(a); *see also* Fed. R. App. Proc. 21; *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004). The writ is a "'drastic and extraordinary' remedy," *Cheney*, 542 U.S. at 380 (citations omitted), that is available only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so," *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)). "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." *Cheney*, 542 U.S. at 380 (internal quotation marks and citations omitted).

A petition must satisfy three conditions before we may grant a writ of mandamus:

> First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

13

*Id.* at 380–81 (citations and internal quotation marks omitted) (alterations adopted). Shalhoub argues that his petition satisfies all three conditions for a writ of mandamus. We disagree.

Shalhoub fails to establish that he has no adequate means to challenge the indictment. Shalhoub argues that he is under no obligation to travel to the United States and his indictment will pend indefinitely unless we compel the district court to rule on his motion. The indictment has been pending against Shalhoub for nearly twenty years. "At any time during this long interval he had only to show up in . . . district court" to challenge the indictment. *See In re Kashamu*, 769 F.3d 490, 493 (7th Cir. 2014). That he does not want to submit himself to the jurisdiction of the federal courts does not make the legal remedies available to challenge his indictment inadequate.

Shalhoub also fails to identify any "clear abuse of discretion" by the district court. *Cheney*, 542 U.S. at 380 (citation omitted). Shalhoub argues that he has a right to the writ because he is not a fugitive and that the district court erred when it applied the doctrine of "constructive flight" to him, but we have held that a "defendant need not leave the jurisdiction" for the doctrine of fugitive disentitlement to apply. *Barnette*, 129 F.3d at 1184. "[W]hile legally outside the jurisdiction[, the defendant] may constructively flee by deciding not to return." *Id.* Shalhoub asserts that *Barnette* is distinguishable because he was in his home

14

country when the grand jury returned his indictment unlike the defendant in *Barnette*. But whether Shalhoub was in Saudi Arabia when the grand jury indicted him is beside the point. Like the defendant in *Barnette*, Shalhoub knew of the indictment and "refused to surrender himself to th[e] jurisdiction of the court," *id.*, electing instead not to travel outside of Saudi Arabia to avoid apprehension. The district court did not clearly abuse its discretion when it applied the doctrine of constructive flight to Shalhoub.

Nor has Shalhoub established a clear and indisputable right to the writ. Shalhoub argues that "labeling [him] a 'fugitive' without a hearing or evidentiary showing violates due process, because the 'fugitive' label constitutes a stigmatizing statement." But, as explained earlier, the constitutional guarantee of due process did not entitle Shalhoub to any procedural protections before the district court labelled him a fugitive. *See Allen*, 166 U.S. at 141; *Clark*, 794 F.2d at 598; *Joensen*, 615 F.2d at 1079. A fugitive is someone who has been offered process and refuses it. *Fugitive*, *Black's Law Dictionary* (10th ed. 2014) ("A criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp. by fleeing the jurisdiction or by hiding."). The guarantee of due process is not violated whenever a defendant dislikes the process offered.

15

Shalhoub argues that his right to the writ is clear and indisputable because the International Parental Kidnapping Crime Act cannot "apply . . . extraterritorially to conduct that occurred within Saudi Arabia in compliance with Saudi law," but we disagree. Although we ordinarily operate under the presumption that a statute does not apply extraterritorially, *United States v. Perez-Herrera*, 610 F.2d 289, 290 (5th Cir. 1980), it makes no sense to say that the *International* Parental Kidnapping Crime Act—which makes it a crime to "remove[] a child from the United States . . . or retain[] a child . . . outside the United States," 18 U.S.C. § 1204(a)—does *not* apply to conduct that occurs in another country. *United States v. MacAllister*, 160 F.3d 1304, 1307 (11th Cir. 1998) ("[W]e ask whether the language [of the statute] gives *any indication* of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control." (emphasis added) (citation and internal quotation marks omitted)). The plain text of the Act extends the force of federal law to conduct that occurs "without or beyond the limits of" the United States—that is, extraterritorially. *Outside*, *Webster's New International Dictionary* 1735 (2d ed. 1961).

Nor does Shalhoub have a clear and indisputable right to mandamus on the ground that venue is improper in the Southern District of Florida. Venue lies "in any district in which [an] offense was begun, continued, or completed." 18 U.S.C.

16

§ 3237(a). The indictment contains enough information to suggest that the crime commenced in the Southern District of Florida where Shalhoub's ex-wife lived before their daughter was removed from the United States. And Shalhoub once resided in the Southern District of Florida. *Contra United States v. Clenney*, 434 F.3d 78 (5th Cir. 2005) (holding that venue did not lie in the Northern District of Texas because the defendant had "never set foot in the Northern District"). In any event, a motion to dismiss an indictment for improper venue is not the kind of "compelling" question that justifies issuance of the writ. *See United States v. Martin*, 620 F.2d 237, 239 (10th Cir. 1980).

Shalhoub exhorts us to follow *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009), in which the court granted a writ of mandamus to a defendant who lived outside of the United States and sought to dismiss an indictment through a special appearance of his counsel. Shalhoub argues that his petition is identical to the petition in *Hijazi*. Shalhoub argues that, like the petitioner in *Hijazi*, he is under "no obligation to travel to the United States," he has suffered prejudice by not being able to travel, and his claims could not "be remedied by the regular appeals process." *Id.* at 407. We reject this argument.

Unlike the petitioner in *Hijazi*, Shalhoub cites no refusal by the Saudi Government to extradite him, and he has significant contacts with the United States. *Id.* at 407–14. Notwithstanding what the Seventh Circuit has stated on this

17

issue, *see id.* at 407 (explaining that although Hijazi could "show[] up in court" to challenge the indictment, "Hijazi ha[d] [a] right to stay [in Kuwait], and in that way, to refuse to cooperate with the U.S. proceeding"), we submit that Shalhoub has an adequate remedy: appearance in the district court.

We are not "satisfied that the writ is appropriate under the circumstances." *Cheney*, 542. U.S. at 381. Shalhoub's petition does not raise the kinds of significant questions necessary for issuance of the writ. *Id.* (explaining that separation of powers is the kind of significant question that the writ could be used to address). If Shalhoub wants to the challenge the indictment, he need only submit himself to the jurisdiction of the district court.

## IV.    CONCLUSION

We **DISMISS** Shalhoub's appeal for lack of appellate jurisdiction, and we **DENY** his petition for a writ of mandamus.