**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0601n.06
Filed: July 14, 2005

**No. 04-3617**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA, )
)
       Plaintiff-Appellant, )
)
v. )
)
ANDRE S. COLVIN, )
)
       Defendant-Appellee. )

**ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

**OPINION**

BEFORE: NORRIS and DAUGHTREY, Circuit Judges; JORDAN, District Judge.[*]

**ALAN E. NORRIS, Circuit Judge.** The government appeals from the district court's decision to bar retrial of defendant Andre Colvin pursuant to the Double Jeopardy Clause of the Fifth Amendment after the court granted his motion for a mistrial. Colvin was charged with violating 18 U.S.C. § 922(g)(1) for unlawful possession of firearms by a convicted felon and two counts of aiding and abetting the making of false statements in connection with the purchase of firearms, in violation of 18 U.S.C. § 922(a)(6). During cross-examination of a government witness, defense counsel ascertained that the government did not disclose an unverified lead concerning the whereabouts of an uncharged accomplice. The district court granted a mistrial and determined that retrial was barred by double jeopardy. This appeal ensued.

---

[*]The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

**I.**

On August 17 and 18, 2002, Colvin spoke with Betty Jo Keefer and Chelita Parker, respectively, and arranged for them to help him with an errand. He and another man, who is referred to as "Rich" in the record, picked up the two women on the morning of August 18. Neither Parker nor Keefer had met Rich before. Colvin then drove the foursome to the Summit County, Ohio Fairgrounds where a gun sale was taking place.

In her testimony, Parker indicated that Rich suggested that she peruse the guns. Then, Colvin asked her to fill out an application to purchase some guns and directed her to ascertain their price. He selected two handguns, and Rich gave her money to purchase the guns.

Meanwhile, Keefer was at another table looking at guns. She testified that "Richard followed me and Dollar [Colvin] was walking around and I filled out my application and Richard basically stuck around me but Dollar was picking out—they both picked out what guns they wanted." Again, Rich supplied the money to buy the guns.[1]

After the transactions were completed, Parker and Keefer carried them to Colvin's car and put them in the trunk. They both testified that they never saw the guns again.

Later, Parker became concerned that she would be blamed for purchasing the guns "if anything happened" with them and told Colvin that she was going to report them as stolen. Similarly, Keefer testified that Colvin told her to report that the guns she purchased had been stolen.

---

[1]Colvin was only indicted for Parker's gun purchase because the guns that Keefer bought were manufactured in Ohio and did not pass through interstate commerce.

On August 20, 2002, both women filed separate, false incident reports with the Akron Police Department.

In order to investigate the allegations, detectives Paul Bralek and Matt Hudak and Special Agent Charles Turner contacted both women. Detective Bralek testified that Keefer's report looked suspicious and that when he interviewed her regarding the theft, he informed her that he did not believe that her allegations were true. Eventually, she admitted that she falsely filed the report and had purchased the guns for Colvin, whom she knew to be a convicted felon.

Following this admission, the officers pressed Keefer to make a recorded call to Colvin to arrange for a staged drug buy. Colvin agreed to a meeting, but when he arrived, he told Keefer that he did not have drugs to sell. The police arrested Colvin for driving with a suspended license and later charged him with the unlawful possession of firearms by a felon. After Colvin was arrested, the officers conducted an inventory of his automobile but never found the guns.

The officers learned that Parker similarly falsified her incident report during their interview with Keefer. Both Parker and Keefer were charged with filing false police reports and were ordered to pay a fine.

In connection with their investigation of the gun transactions, the police officers never searched the homes of Parker or Keefer. Moreover, although Keefer provided the officers with an address were Colvin had stayed, they did not search that residence. However, Turner testified that he performed a computer query of the address and did not find a connection between that residence and Colvin.

Prior to trial, one of the nine guns purchased at the show was recovered in connection with a crime that was committed while Colvin was in custody. Agent Turner testified that he could not interview the person arrested in connection with that gun because "[t]he person that it was recovered from was not made available to me."

Colvin was indicted under 18 U.S.C. § 922(g)(1) for unlawful possession of firearms by a convicted felon and for aiding and abetting the making of false statements in connection with the purchase of firearms, in violation of 18 U.S.C. § 922(a)(6). On the third day of trial, Agent Turner testified as the government's final witness. During cross-examination, defense counsel sought to highlight the deficiencies in the offices' investigation:

> Q: Was there any follow up with respect finding this Rich?
>
> A: Yes.
>
> Q: What follow up did you—what follow up did you participate in[?]
>
> A: I recently had some other telephone numbers that were on these phone tolls subpoenaed for subscriber information and I believe we may have identified Rich and I went to his house and left a business card for the individual to call me back and I haven't heard from the individual as yet.

According to *Brady v. Maryland*, 373 U.S. 83 (1963), the government must disclose to the defendant all exculpatory evidence in its possession. *Id*. at 87. Therefore, in light of this new, possibly exculpatory information, defense counsel requested a mistrial. The prosecutor admitted that she became aware of this information the first morning of trial, but defended her decision not to pass it along to Colvin by saying "I don't know that it's the guy; that the investigation just isn't

complete." The government suggested on several occasions that the court should give a curative instruction to limit Agent Turner's testimony.

Ultimately, the district court granted the motion for a mistrial, but added that it had not decided yet whether the government could retry Colvin.

On April 13, 2004, the district court entered an order declaring that "[f]or the reasons set forth in the Memorandum Opinion to be filed shortly, the court finds that double jeopardy has attached, and the government is barred from re-charging or re-trying Colvin on the alleged offense charged in the instant indictment."

The government filed a notice of appeal. On November 5, 2005, while the appeal was pending, the district court entered a Memorandum and Order setting forth the basis for its conclusion that double jeopardy barred retrial.

## II.

We review a claim of double jeopardy *de novo*. *United States v. Dakota*, 197 F.3d 821, 826 (6th Cir. 1999); *see also United Sates v. Neal*, 93 F.3d 219, 221 (6th Cir. 1996). However, whether the prosecutor intended to goad the defendant into requesting a retrial is a question of fact and therefore subject to review for clear error. *See Oregon v. Kennedy*, 456 U.S. 667, 675 (1982); *see also United States v. Vallejo*, 297 F.3d 1154, 1162 (11th Cir. 2002).

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from multiple prosecutions for the same offense. *Kennedy*, 456 U.S. at 671. Where a mistrial has been declared, the defendant's "valued right to have his trial completed by a particular tribunal" is implicated. *Id*. at 671-72 (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

If the court declares a mistrial without a defendant's consent, retrial presumably violates the Double Jeopardy Clause unless "there is manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated." *Tinsley v. Million*, 399 F.3d 796, 812 (6th Cir. 2005) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 479, 580 (1824)). In the case of a mistrial declared at the defendant's request, the "manifest necessity" test is not triggered because the defendant himself has elected to terminate the proceedings against him. *Kennedy*, 456 U.S. at 672. Traditionally, then, retrial is permissible when the defendant requests a mistrial. *See United States v. Tateo*, 377 U.S. 463, 467 (1964) ("If [defendant] had *requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him.")

There is one caveat, however, to the rule that the Double Jeopardy Clause is no bar to retrial. The Supreme Court has described this narrow exception to be "where the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial.'" *Kennedy*, 456 U.S. at 673 (quoting *United States v. Dinitz*, 424 U.S. 600, 611 (1976)). If the prosecutor were to force the defendant's hand in such a manner, "the defendant's valued right to complete his trial before the first jury would be a hollow shell if the inevitable motion for mistrial were held to prevent a later invocation of the bar of double jeopardy in all circumstances." *Id.* In order to determine whether the prosecutor engaged in misconduct sufficient to warrant the invocation of double jeopardy, we must examine her "intent from objective facts and circumstances." *Id*. at 675.

This circuit has noted that in order to prove prosecutorial misconduct that triggers double jeopardy, the defendant must demonstrate more than a deliberate act on the part of the prosecutor: "there must be a showing that the prosecutor's deliberate conduct was intended to provoke the defendant into moving for a mistrial." *United States v. White*, 914 F.2d 747, 752 (6th Cir. 1990).

In holding that the Double Jeopardy Clause barred re-prosecution of Colvin, the district court reasoned that the government was aware that the defense hinged on placing blame for the straw purchases on Rich, and by concealing the fact that police might have located Rich, the government deprived Colin of the opportunity to investigate this defense. Moreover, in the district court's view "[e]ven with the government's continuing deliberate silence on that issue, Colvin presented an increasingly strong case for acquittal[.]" Memorandum and Order, November 5, 2004, at 23. According to the district court, the "evidence and testimony up through the declaration of a mistrial strongly suggests that the jury might well harbor a reasonable doubt about Colvin's guilt." *Id*. at 21. The opinion makes clear that the district court considered the government's case to be weak because no weapon was found in Colvin's possession, because the police conducted a lackluster search for the guns, and because Rich appeared to pay for and direct the gun purchases.

With respect to the government's intent, the district court proposed that "[t]he prosecution apparently reasoned that it could provoke Colvin into moving for a mistrial, it would escape defense counsel's solid performance here and have time to prepare a far stronger case for re-trial with Rich's help." Memorandum at 25-26. In conclusion, the district court explained that a mistrial should not be allowed to "operate[] as a 'post-jeopardy continuance to allow the prosecution to strengthen its

case.'" *Id.* at 28 (citing *United States v. Wilson*, 534 F.2d 76, 80 (6th Cir. 1976) (quoting *Illinois v. Somerville*, 410 U.S. 458, 469 (1973))).

Pursuant to applicable precedent, the pertinent question before the district court was whether the evidence demonstrated that the prosecution intended to provoke a mistrial. The district court speculated that the government intended to cause a mistrial because its case against Colvin was not going well, but the prosecutor's actions at trial belie such an intent. As the government aptly notes in its brief, defense counsel elicited the information that led to a mistrial. Furthermore, when defense counsel requested the mistrial, the prosecutor suggested on several occasions that the proper remedy was a curative instruction, not a mistrial. Both of these considerations are relevant to the question of the government's intent.

Moreover, the government's case was not as weak as the district court described. The testimony presented at trial established that, although Rich paid for the guns, Colvin arranged for Keefer and Parker to carry out the straw purchases and actively participated in selecting which guns the women should buy. This evidence, if believed by the jury, would be sufficient to convict Colvin on the charges listed in the indictment and undercuts the conclusion that the government intended to elicit a mistrial in order to avoid a guaranteed acquittal. Accordingly, the Double Jeopardy Clause does not bar defendant's retrial.

**III.**

For the foregoing reasons, the decision of the district court is **reversed** and the action **remanded** for further proceedings consistent with this opinion.