RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0037p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

**18-4035**

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

AZAT MARTIROSSIAN,

*Defendant-Appellant*.

Nos. 18-4035/4114

**18-4114**

IN RE: AZAT MARTIROSSIAN,

*Petitioner*.

_____

Appeal and Petition for Writ of Mandamus
from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:17-cr-00233-3—Edmund A. Sargus, Jr., District Judge.

Decided and Filed: March 7, 2019

Before: NORRIS, SUTTON, and COOK, Circuit Judges.

_____

**COUNSEL**

**ON RESPONSE TO SHOW CAUSE ORDER AND PETITION FOR WRIT OF MANDAMUS:** Homer E. Moyer, Jr., Preston L. Pugh, Ann K. Sultan, Katherine E. Pappas, MILLER & CHEVALIER CHARTERED, Washington, D.C., Armen Kharazian LAW OFFICES OF ARMEN KHARAZIAN PLLC, Washington, D.C., for Azat Martirossian. **ON REPLY:** Jeremy R. Sanders, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for United States in 18-4035.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.   Federal courts do not play "catch me if you can."   If a defendant refuses to show up to answer an indictment, ignores an arrest warrant, or leaves the jurisdiction, the court may decline to resolve any objections to the indictment in his absence. What is known loosely as the fugitive disentitlement doctrine generally permits a federal court to insist on a defendant's presence in the jurisdiction before it resolves challenges to the criminal charges.

Azat Martirossian, a citizen of Armenia now living in China, refused to answer criminal charges in the Southern District of Ohio.   When his lawyers filed a motion to dismiss the indictment, the district court declared him a fugitive and refused to rule on the motion until he submitted himself to the jurisdiction of the Southern District—submitted himself in other words to the benefits *or* burdens of the ruling.   Martirossian appealed the decision and in the alternative filed a mandamus petition asking us to order the district court to rule on his motion.   Because the district court's decision is not a final order, we lack jurisdiction over Martirossian's appeal.   And because Martirossian has not met the lofty bar for granting this extraordinary writ, we deny his mandamus petition.

I.

Martirossian allegedly participated in a scheme to bribe a Kazakh official on behalf of Rolls-Royce Energy Systems, Inc., an Ohio subsidiary of a British firm.   Rolls-Royce makes compressors and power turbines used in gas and oil power-generation projects.   Martirossian and his co-defendants, we are told, funneled money through U.S. banks to help Rolls-Royce secure contracts from a joint Chinese-Kazakh state-owned gas enterprise.   On May 24, 2018, a federal grand jury indicted Martirossian on money laundering and conspiracy charges under 18 U.S.C. § 1956, and the district court issued a warrant to arrest him.

In response, his lawyers filed a motion to dismiss the indictment on the ground that § 1956 does not reach Martirossian's conduct.   The district court held the motion in abeyance

until he appeared in court or agreed to submit to the jurisdiction of the court.  He appealed the ruling and filed a mandamus petition asking us to require the district court to rule on the motion.

## II.

*Final order*.  We lack appellate jurisdiction over Martirossian's appeal.  Courts of appeals have authority to review only "final decisions" of the district courts, 28 U.S.C. § 1291, a rule designed to prevent "piecemeal" adjudication, *Abney v. United States*, 431 U.S. 651, 656 (1977).  Without the final order rule, cases might bounce back and forth between the trial and appellate courts, as disgruntled litigants seek to reverse each and every ruling, no matter how minor.  The policy behind the rule is at its apex—its "strongest" in the words of the U.S. Supreme Court—"in the field of criminal law."  *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982) (per curiam).

Final orders normally are easy to spot.  A final order ends litigation on the merits and leaves nothing to do but execute the judgment.  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989).  In the criminal context, that generally means a defendant may lodge an appeal only after the court imposes a conviction and a sentence.  *Id.*

That is not this case.  The disputed action—a decision to hold a motion to dismiss in abeyance until the defendant appears in court—does not end the litigation.  Plenty of potential chapters in this case remain to be told.

Martirossian's case also does not come within a limited exception to the rule—orders treated as final even though they do not end the lawsuit.  *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).  To qualify, the order must (1) finally resolve the question at hand, (2) involve a significant issue separate from the merits of the action, and (3) be unreviewable on appeal from a final judgment.  *Id.*  The exception has a narrow scope in criminal cases.  Just four types of orders have made the cut:  the denial of a motion to dismiss based on the Double Jeopardy Clause, *Abney*, 431 U.S. at 659; the denial of a motion to dismiss based on the Speech and Debate Clause, *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979); a court's order to forcibly medicate a mentally ill defendant, *Sell v. United States*, 539 U.S. 166, 176–77 (2003); and a court's refusal to reduce bail, *Stack v. Boyle*, 342 U.S. 1, 6 (1951).  The

setting of each exception confirms its narrow reach:  The constitutional right not to be twice *tried* would be lost in the absence of an immediate challenge, *Abney*, 431 U.S. at 660–62; the constitutional right to speak in Congress without fear of being "questioned in any other Place" would be compromised in the absence of an immediate challenge, *Helstoski*, 442 U.S. at 508; the constitutional right not to be forcibly medicated would be shortchanged in the absence of an immediate challenge, *Sell*, 539 U.S. at 176–77; and the constitutional right to non-excessive bail would be sacrificed in the absence of an immediate appeal, *see Flanagan v. United States*, 465 U.S. 259, 266 (1984); *Stack*, 342 U.S. at 12 (Jackson, J., separate opinion).

On top of that, the Supreme Court has cautioned us time, *Midland*, 489 U.S. at 799, time, *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994), and time again not to expand the collateral order club's "selective . . . membership,"  *Will v. Hallock*, 546 U.S. 345, 350 (2006).  That explains the many decisions of the Court rejecting attempted interlocutory appeals under the collateral order doctrine.  Here are a few examples in the criminal arena: A defendant can't collaterally appeal a counsel's disqualification, *Flanagan*, 465 U.S. at 266–67; a violation of grand jury secrecy, *Midland*, 489 U.S. at 799; or a vindictive prosecution, *Hollywood Motor*, 458 U.S. at 267.  The same goes for a speedy trial claim, *United States v. MacDonald*, 435 U.S. 850, 857 (1978); a challenge to the sufficiency of an indictment, *Abney*, 431 U.S. at 663; and a motion to suppress evidence, *see Cogen v. United States*, 278 U.S. 221, 227 (1929).

In seeking to add fugitive disentitlement decisions to the short list of appealable non-final orders in criminal cases, Martirossian comes up short.  He does not appear to meet any of the three *Cohen* requirements.

1.  It is not clear, to start, that the district court's order "finally" resolves the motion to dismiss the indictment.  The court, recall, held the motion in abeyance until Martirossian agrees to submit to the jurisdiction of the court, until, that is, he agrees to accept the potential benefit *or* burden of any ruling.  This precondition of mutuality leaves Martirossian just where he was before his attorneys filed the motion, neither better nor worse for it.

2.  The issues presented are not sufficiently important and are not sufficiently distinct from the merits of the action to warrant mid-case review.  As to importance, Martirossian has "no more of a freestanding right not to be labeled a fugitive, than a criminal defendant has a freestanding right not to be labeled a defendant."  *United States v. Shalhoub*, 855 F.3d 1255, 1261–62 (11th Cir. 2017).  Just as the one does not outweigh the finality requirement, neither does the other.  If Martirossian needs the district court to decide his motion, this international businessman holds the key to unlock his dilemma:  travel to Ohio and answer the charges or at least commit to accept the consequences, good or bad, of the ruling.  That is all the district court asked of him.

Considerable overlap also exists between the arguments underlying his interlocutory appeal and the merits of the case.  Martirossian claims that he cannot be a fugitive from the United States because he has never traveled to the country and his targeted conduct occurred abroad.  For many of the same reasons, Martirossian argues that the money laundering statute does not apply to him.  As Martirossian acknowledges, indeed hopes, a decision about whether he counts as a fugitive would "lead the way to a determination of whether" the money laundering statute covers foreigners like him.  Resp. 12.  By the defendant's own account, these issues are interrelated, suggesting we should not decide them prematurely.

3.  The key issue presented—does the federal statute cover this conduct?—is capable of review after a final judgment.  Yes, Martirossian's status as a *fugitive* would become moot if he submits to the jurisdiction of the federal courts.  But that is true for anyone unwilling to answer an indictment or arrest warrant.  And yet that claim alone has never warranted an interlocutory appeal.  In one sense, the chief remedy available on appeal—a reversal—always delays justice, always cannot rewrite history, and thus always falls short of making the wronged party entirely whole. *Dig. Equip. Corp.*, 511 U.S. at 872.

Many trial court decisions, in truth, are effectively uncorrectable on appeal, including ones just like this one.  Imagine a federal defendant who thinks Congress has no authority under the Commerce Clause to regulate a given activity.  Just like a defendant who thinks a federal statute does not reach (or cannot reach) conduct abroad, the defendant who thinks Congress has exceeded its lawmaking power must await a conviction before appealing a district court's

decision that Congress acted within its powers. Neither one of these trial rulings is immediately appealable. A defendant does not increase his rights to an appeal by being a fugitive.

Cementing this conclusion is the reasoning of the one court of appeals to face this issue straight on. In *United States v. Shalhoub*, a Saudi citizen allegedly took his daughter to Saudi Arabia against his ex-wife's wishes. 855 F.3d at 1258. When a Florida grand jury indicted him for kidnapping, he moved to appear through counsel and dismiss the indictment. *Id.* at 1258–59. The district court applied the fugitive disentitlement doctrine and denied his motion without prejudice, promising to allow the fugitive to reassert his claims if he came to court. *Id.* at 1259.

For many of the same reasons we adopt here, the Eleventh Circuit concluded that it lacked jurisdiction to review the district court's decision under the collateral order doctrine. *Id.* *Shalhoub* surveyed the many Supreme Court precedents refusing to permit collateral appeals and noted that the defendant's motion fit into none of the exceptions. *Id.* at 1261. As the Eleventh Circuit put it, "absent the assertion of a right not to be tried or the assertion of a right akin to the right against excessive bail, a defendant must accept the burdens of trial and sentencing before he obtains appellate review of an adverse ruling." *Id.* Agreed.

Martirossian raises a few counterarguments. None makes a difference.

Martirossian analogizes his case to the denial of a motion to dismiss a case for double jeopardy. Yes, the Double Jeopardy Clause guarantees a "right to avoid trial." *Dig. Equip. Corp.*, 511 U.S. at 875. And yes, if 18 U.S.C. § 1956 does not apply extraterritorially, he would in a sense have a right not to be tried under the statute. But the point proves too much. The same could be said of *all* challenges to an indictment that would prohibit the charges and thus conflates "a right not to be tried" with "a right whose remedy requires the dismissal of charges." *Hollywood Motor*, 458 U.S. at 269. Truth be told, "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Dig. Equip. Corp.*, 511 U.S. at 873; *see Will*, 546 U.S. at 351.

Martirossian asks us to consider another analogy—that determining a defendant's fugitive status mirrors a motion to reduce bail because both circumstances "inform a defendant of whether he or she may prove their innocence without confinement." Resp. 10. But the right

against excessive bail arises from the U.S. Constitution, and Martirossian has no constitutional right not to be labeled a fugitive.

Today's dispute also differs from *United States v. Bokhari*, 757 F.3d 664 (7th Cir. 2014). In that case, a district court applied the fugitive disentitlement doctrine to deny a foreign defendant's motion to dismiss an indictment. The court of appeals held that it had jurisdiction over the appeal on comity grounds because a Pakistani court already had found "insufficient admissible evidence to sustain a prima facie case" for extradition, leaving it unclear whether the United States lacked probable cause to prosecute and leaving it unclear whether a double-jeopardy-like violation would occur. *Id.* at 667, 670. In contrast, no other court, whether foreign or domestic, has ruled on Martirossian's claim, and he doesn't—and can't—raise a comity claim or anything like a double jeopardy claim as a result.

*Mandamus petition.* In the event the collateral order doctrine does not permit immediate review of the court's order, Martirossian asks us to issue a writ of mandamus ordering the district court to rule on his motion to dismiss. But these kinds of extraordinary writs present an even more elusive target, especially when they look like efforts to end run the final order doctrine.

The All Writs Act allows a federal court of appeals to issue a writ of mandamus directing a district court to enforce a specific duty. 28 U.S.C. § 1651(a). It is an "extraordinary" remedy designed to confine a court to its proper authority or to require it to undertake a clearly articulated duty. *Will v. United States*, 389 U.S. 90, 95 (1967). The applicant must satisfy three requirements: (1) The petitioner must not have any other method of obtaining relief; (2) he must show that he has a "clear and indisputable" legal right; and (3) he still must convince the court that the "writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004) (quotation omitted).

Martirossian fails to meet each condition.

1. For one, he has a readily available means of obtaining a ruling on his motion to dismiss the indictment. He can show up in the Southern District of Ohio, and the court as promised will decide his motion. A multi-national businessman willing to work with an Ohio company must take the bitter with the sweet. The benefit of working with an Ohio company

comes with the duty to answer a charge of violating federal law arising from that work—or at least agreeing to be bound by any ruling, whether for him or against him. Yet none of the pleadings filed by Martirossian's lawyers indicates that he would agree to submit to the court's jurisdiction if the court ruled against his motion to dismiss the indictment and determined that 18 U.S.C. § 1956 applies to his conduct.

2. The district court did not violate any clear and indisputable authority in taking this route. It reasonably held that the fugitive disentitlement doctrine applies to actual flight and constructive flight, in other words (1) to defendants who leave the country before or after an indictment to evade justice or (2) to defendants who refuse to answer an indictment or arrest warrant after they issue. We know of no case that bars applying it in both settings to pending criminal charges. The purposes behind the doctrine apply in both settings. *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 242 (1993). And the doctrine promotes judicial economy because it frees judges from giving what amount to advisory opinions that are unlikely to be enforced if the court rules against the fugitive. *Id.*

We have previously applied the doctrine to litigants who, like Martirossian, do not surrender themselves to law enforcement authorities. *See, e.g.*, *Garcia-Flores v. Gonzales*, 477 F.3d 439, 442 (6th Cir. 2007). So too, a defendant need not be present in and leave a jurisdiction to become a fugitive; the mere refusal to report for prosecution can constitute constructive flight. *See Shalhoub*, 855 F.3d at 1263.

3. As for the exercise of our discretion, we must acknowledge a practical consideration. The imperative that the final judgment rule apply with the "utmost strictness in criminal cases," *Flanagan*, 465 U.S. at 263, would not amount to much if a mandamus petition could be used to circumvent it. That is what would happen here if we granted the writ to secure relief that the final judgment rule prohibits. A better explanation than this one is needed.

That the status quo leaves Martirossian with risks of extradition or limits on his travel is true. But the same is true for a criminal defendant who is charged with a crime in one State of this country and refuses to make an appearance in that State's courts. He may be arrested in another State and required to submit to the jurisdiction of the other State. *See* U.S. Const. art.

IV, § 2, cl. 2; 18 U.S.C. § 3182 (implementing the Extradition Clause).  The same is true with respect to international travel and residency, though of course some countries (like China) don't have an extradition treaty with the United States.  *See* 18 U.S.C. § 3181.

Martirossian responds that he has no other adequate means of contesting his fugitive status and of limiting the risk that he could be extradited if he travels to a country with an extradition treaty with the United States.  But he can get that relief without our help.  All he has to do is show up.  No one who is indicted and who declines to answer the charge has a right to be labeled a non-fugitive.

*In re Hijazi*, 589 F.3d 401 (7th Cir. 2009), does not alter this conclusion.  Hijazi and Martirossian do not stand in the same shoes.  When Hijazi "learned of the indictment" against him, "he surrendered to the Kuwaiti authorities.  Had those authorities been inclined to detain him and then to turn him over to the U.S. prosecutors, they could have done so.  Or they could have prosecuted him under Kuwaiti law." *Id.* at 412–13.  They did neither and instead objected to the United States' conduct in issuing the indictment. *Id.* at 405.  Martirossian did not submit to Chinese authorities.  Whatever the distant reaches of the fugitive disentitlement doctrine, it is reasonable—and certainly not the denial of a clear and indisputable right—to distinguish between a defendant who submits to authorities and one who doesn't.

For these reasons, we dismiss Martirossian's appeal for lack of appellate jurisdiction and deny his mandamus petition.