RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0297p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-5673

RAY FOSTER,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:15-cr-00091-3—Travis R. McDonough, District Judge.

Decided and Filed:  December 17, 2019

Before:  SUTTON, NALBANDIAN, and READLER, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:**  Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant.  Terra L. Bay, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.

_____

**OPINION**

_____

CHAD A. READLER, Circuit Judge.  At its core, the job of a prosecutor is "[to] do justice."  *Confirmation Hearing on the Nomination of Hon. Sonia Sotomayor, to be an Associate Justice of the Supreme Court of the United States, Before the S. Comm. on the Judiciary*, 111th Cong. 359 (2009) (quoting famed prosecutor Hamilton Burger from the television show *Perry Mason*).  That is no small task.  In honoring the trust placed upon them as public officials,

prosecutors pursue justice by prosecuting on the public's behalf those accused of violating our criminal laws. As they pursue those legal proceedings, prosecutors must exercise fairly their tremendous discretion and weighty judgment. And they must act with appropriate respect for prosecutorial norms, court rules, and constitutional limitations.

Many of those principles seemingly were not honored during Ray Foster's drug-conspiracy trial. From the start, the prosecution asked witnesses to relay out-of-court statements made by unnamed informants, in violation of Foster's Confrontation Clause rights. Despite being instructed to end the practice, the prosecution's violations continued. When it eventually granted a mistrial, the district court scolded the prosecution for jeopardizing Foster's right to a fair trial.

But Foster wanted more. He claimed that the prosecutors had not simply made a mistake, but instead had acted deliberately to coax Foster into requesting a mistrial. On that basis, Foster moved to dismiss the indictment. To his mind, a second trial would violate yet another of his constitutional rights, this time the right against duplicative prosecutions protected by the Double Jeopardy Clause. But Foster's claim did not match the facts. While regrettable, the prosecution's misconduct, the district court concluded, did not come in response to trial adversities or otherwise suggest the prosecution acted with an eye to securing a mistrial.

We agree with the district court in all respects. The prosecution was undoubtedly careless. But there is no evidence of intentional misconduct part and parcel of a scheme to deprive Foster of his double jeopardy rights. Accordingly, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Defendant Ray Foster was suspected of conspiring with at least a dozen others to illegally distribute methamphetamine in southeastern Tennessee. Officers of the Tennessee Bureau of Investigation thus turned their investigative eyes toward Foster. In searching garbage Foster had left on the curb, the officers discovered materials indicating methamphetamine use and distribution. Next, they approached Foster in his home, asking to search the residence. With Foster's consent, agents discovered a wave of incriminating evidence inside, including

methamphetamine, materials used for distributing methamphetamine, and $2,000 in twenties. Making matters worse for Foster, during the search, he incriminated himself, admitting he had a role in the methamphetamine-trafficking conspiracy, but deflecting leadership responsibility to others.

A grand jury issued a thirteen-count indictment against Foster and his co-conspirators. Foster was included in two of those counts:

- Count one, which charged Foster with conspiring to distribute and possess with intent to distribute at least 50 grams of methamphetamine and at least 500 grams of methamphetamine mixture, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), & 846;

- Count thirteen, which charged Foster with possession with intent to distribute methamphetamine mixture, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C).

At trial, Foster chose to represent himself, with counsel on standby. As its first witness, the prosecution called Agent Bryan Freeman of the Tennessee Bureau of Investigation. In response to questions during his direct examination, Freeman repeated informants' out-of-court statements on several occasions, largely without objection from Foster.

After two particularly egregious exchanges, the district court intervened. In the first, Freeman testified that he heard Foster's name come up repeatedly in interviews with individuals claiming to be Foster's associates, which Freeman believed tied Foster to drug dealers. In the second, Freeman relayed a story about an informant who drove a drug dealer to a church in Foster's neighborhood for an apparent drug transaction with Foster. Freeman subsequently admitted during a sidebar that he had no personal knowledge of the events he had described.

In all, the prosecution committed over a dozen similar violations on the first day of trial alone. Time and again, the prosecution would solicit from Freeman informants' out-of-court statements about which Freeman admittedly had no personal knowledge. When confronted by the district court, the prosecution repeatedly argued that the statements did not violate the Confrontation Clause, citing our decision in *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004). The district court was unpersuaded.

The next day, the district court advised the parties of its concern that Freeman's testimony contained numerous Sixth Amendment violations and asked the parties to propose a curative jury instruction.  Foster in turn moved for a mistrial, arguing that no jury instruction would be sufficient to cure the error.  The lead prosecutor requested that the court move forward with the trial, noting his intention to "assiduously avoid having any of that kind of testimony additionally come out unless [he] felt like it was absolutely necessary, at which point [he] would highlight it for the Court before [he] did it."  But if the court believed a Confrontation Clause violation had occurred, the prosecution conceded that a jury instruction likely would not cure the harm.  With that concession, the district court granted Foster's request for a mistrial.

Foster then moved to dismiss the indictment.  In his motion, Foster asserted that another trial would violate the Fifth Amendment's Double Jeopardy Clause, as the prosecution had acted deliberately to cause a mistrial.  In response, the prosecution, in addition to defending the way in which it elicited testimony, also noted its insistence at all stages that the trial continue as evidence that it had not intended to provoke a mistrial.  Agreeing with the government, the district court denied Foster's motion and set a new trial date.

On the first day of the new trial, Foster pled guilty to count one.  In exchange, the prosecution agreed to dismiss count thirteen, to decline to seek certain enhancements against Foster, and to allow Foster to appeal the district court's double jeopardy ruling.  The Presentence Report subsequently set Foster's offense level at 35 and criminal history category at VI—leading to a Sentencing Guidelines range of 292 to 365 months' imprisonment.  But as part of Foster's plea agreement, the government agreed that 180 months of imprisonment and five years of supervised release was an appropriate sentence.  After the district court imposed the agreed-upon sentence, Foster appealed.

## II. ANALYSIS

The Fifth Amendment's Double Jeopardy Clause commands that no criminal defendant shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The "double jeopardy" bar forbids double punishment for the same offense.  And as relevant here, it also protects a criminal defendant from being retried by the same sovereign for

the same offense, where the defendant prevailed in an earlier proceeding. *United States v. Koubriti*, 509 F.3d 746, 748–49 (6th Cir. 2007) (citing *United States v. Cameron*, 953 F.2d 240, 243 (6th Cir. 1992)); *see also Gamble v. United States*, 139 S. Ct. 1960, 1979 (2019).

Where a prior proceeding ends in a mistral rather than an acquittal, the Double Jeopardy Clause does not always bar retrying the defendant. *See Oregon v. Kennedy*, 456 U.S. 667, 672–73 (1982). Whether a retrial would amount to "double jeopardy" oftentimes turns on who requested the underlying mistrial. *See id.* Start with the government. Its request for a mistrial is viewed with constitutional suspicion, and for good reason. After all, the point of the Double Jeopardy Clause is to bar an unsuccessful prosecutor from a second bite at the prosecutorial apple. *See Saulsberry v. Lee*, 937 F.3d 644, 648–49 (6th Cir. 2019). Retrials in that setting are thus allowed only in cases of "manifest necessity"—for example, when the jury is unable to reach a verdict at the initial trial. *See id.* (citing *Arizona v. Washington*, 434 U.S. 497, 503–05 (1978)).

And now the defendant. Her decision to move for a mistrial is generally deemed a waiver of her double jeopardy rights, meaning retrials are allowed. *See Kennedy*, 456 U.S. at 672–73. But what if the defendant is provoked into requesting a mistrial by a conspiring prosecutor who fears an acquittal and prefers a new trial? That possibility for manipulation has not been lost on the courts. We have long discouraged the practice by finding a double jeopardy violation where a prosecutor retries a defendant after "goad[ing] the [defendant] into requesting a mistrial." *United States v. Dinitz*, 424 U.S. 600, 611 (1976). And that is essentially what Foster contends happened here.

Whether the prosecution intended to provoke a mistrial is a factual inquiry. As with other factual determinations, we customarily defer to the district court's assessment regarding intent, unless that determination is clearly erroneous. *Koubriti*, 509 F.3d at 749. To our eye, the district court fairly weighed the competing interests at play. On the one hand, the district court did not mince words in describing the prosecution's litany of "obvious constitutional violations." Indeed, the district court questioned whether the lead prosecutor was "serious" about preserving constitutional rights and reminded him that it was not the court's role to "wait for [the prosecution] to violate somebody's constitutional rights and then try to fix it for [them]." On the

other hand, the district court concluded that the prosecution, despite its shortcomings, nonetheless did not intend to cause a mistrial. After all, the district court noted, there was simply no good reason to do so at that point in the proceeding, as "[n]othing challenging or even mildly unfavorable to the Government's case occurred prior to the conduct in question."

We see no reason to disagree with that assessment. The prosecution's case was strong. And nothing in the trial to that point had caused a setback that might make a mistrial desirable. We thus see no indication that the prosecution encouraged and abetted the "declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant." *Kennedy*, 456 U.S. at 674 (citing *Dinitz*, 424 U.S. at 611) (internal quotation marks omitted). This was not, in other words, an attempt by the government to seek a second bite at the apple; it was just beginning its first.

But, says Foster, the prosecution's misconduct, viewed as a whole, and epitomized by its repeated requests to elicit inadmissible testimony, plainly reflects malintent sufficient to carry the day for double jeopardy purposes. Our precedents say otherwise. Even accepting Foster's allegations, prosecutorial misconduct, standing alone, is insufficient to give rise to a double jeopardy violation. The touchstone, rather, is the prosecutor's intent. And absent evidence of prosecutorial intent to provoke a mistrial, there is no double jeopardy violation. *Phillips v. Ct. Com. Pl., Hamilton Cty.*, 668 F.3d 804, 811 (6th Cir. 2012) (quoting *Kennedy*, 456 U.S. at 675–76 ("harassment or overreaching" by the prosecutor, "even if sufficient to justify a mistrial on defendant's motion, . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause") (ellipsis in original)). Here, Foster has failed to demonstrate that kind of subversive intent. With respect to the instances of misconduct Foster cites, the prosecution forcefully argued against finding that a Confrontation Clause violation occurred. While those arguments were erroneous, they nonetheless undermine the idea that the prosecution was in truth baiting a mistrial.

We commend the district court on its handling of this challenging proceeding. By its wanting performance, the prosecution fell well short of fulfilling its oath to respect Foster's constitutional rights. Yet Foster, in serving as his own counsel, was not well equipped to object to the prosecution's missteps. So the district court stepped in and declared a mistrial. At the

same time, because the prosecution did not intend to cause the mistrial, the district court rightly concluded that initiating a second trial did not run afoul of the Double Jeopardy Clause.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.