NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0386n.06omg

Case No. 20-6017

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Aug 16, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| RICHARD E. PAULUS, M.D., | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |

BEFORE: BATCHELDER, McKEAGUE, and GRIFFIN, Circuit Judges.

**McKEAGUE, Circuit Judge.** A jury convicted Dr. Richard E. Paulus of healthcare fraud and making false statements relating to healthcare. The district court granted Paulus's Rule 29 motion for acquittal based on the insufficiency of the evidence, and we reversed. The district court then denied Paulus's motion for a new trial under *Brady v. Maryland*, and we again reversed. In the instant appeal, Paulus argues that the district court erred by denying his motion to dismiss the indictment because a new trial would violate the Double Jeopardy Clause. We disagree. Therefore, we **AFFIRM** the district court's denial of Paulus's motion to dismiss.

**I.**

This is case is before us for the third time. *See United States v. Paulus* (*Paulus I*), 894 F.3d 267 (6th Cir. 2018); *United States v. Paulus* (*Paulus II*), 952 F.3d 717 (6th Cir. 2020). Our prior opinions contain a detailed factual background of the case.

As relevant here, a jury convicted Dr. Richard E. Paulus of one count of healthcare fraud and ten counts of making false statements relating to healthcare. 18 U.S.C. §§ 1035(a)(2), 1347; *Paulus II*, 894 F.3d at 721. The gravamen of the case was that Paulus was performing medically unnecessary procedures. After trial, Paulus made a Rule 29 motion for a judgment of acquittal and a Rule 33 motion for a new trial. Fed. R. Crim. P. 29, 33. The district court granted Paulus's motion for an acquittal on the basis that the evidence was legally insufficient, set aside the jury's guilty verdict, and conditionally granted his motion for a new trial. *United States v. Paulus*, No. CR 15-15-DLB-EBA, 2017 WL 908409, at *1 (E.D. Ky. Mar. 7, 2017). We disagreed, reversed the judgment of acquittal, reinstated the jury's verdict, and vacated the conditional order granting a new trial. *Paulus I*, 894 F.3d at 280.

After remand but before sentencing, a *Brady* issue arose. The government disclosed a document (the "Shields Letter") produced for Paulus's employer (King's Daughters Medical Center (KDMC)) in an independent review of Paulus's medical work. *Paulus II*, 952 F.3d at 722. The Shields Letter indicated that a smaller percentage of Paulus's cases were medically dubious than the government alleged. *Id.* (explaining that the letter was "less consistent with systemic and purposeful fraud and more consistent with occasional mistakes or diagnostic differences of opinion between cardiologists"). The government planned to use the Shields Letter in its case-in-chief before trial, believing it was inculpatory but also recognized that it had exculpatory value. *Id.*

KDMC objected on the grounds that the Shields Letter was privileged and inadmissible. The district court held an *ex parte* hearing and determined that the letter was inadmissible under Federal Rule of Evidence 408 (and made no privilege ruling). *Id.* The government argued that, regardless of admissibility, it was obligated to disclose the letter as *Brady* evidence. *Id.* But the district court disagreed and ordered that the government and KDMC "were not to disclose" any more information about the KDMC review to Paulus. *Id.* (cleaned up). So Paulus knew nothing of the letter until after remand from *Paulus I*.

Paulus moved for a new trial in light of the Shields Letter. *Id.* The district court denied the motion, and we reversed on the ground that the government's failure to disclose the letter violated Paulus's Fifth Amendment due process rights under *Brady*. *Id.* at 724. While we "sympathize[d] with the [government] because . . . the government believed it had an obligation to disclose the Shields Letter to Paulus and did not do so solely because of the district court's order," we reaffirmed that "*Brady* is about the fairness of the trial and not about ferreting out the 'misdeeds of a prosecutor.'" *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 110 n.17 (1976)). We vacated Paulus's conviction and remanded for a new trial. *Id.* at 728.

Back in the district court, Paulus moved to dismiss the indictment because a retrial would violate the Double Jeopardy Clause of the Fifth Amendment. Paulus argued that the government's failure to disclose the Shields Letter to us in *Paulus I* constituted fraud on the court, rendering *Paulus I* void, thereby reinstating the district court's grant of acquittal, and thus invoking the Double Jeopardy Clause's protections. The district court denied the motion. The district court reasoned that Paulus "consented to a second trial by moving for both a judgment of acquittal or a new trial." The district court also declined to hold that *Paulus I* was void due to fraud on the Sixth Circuit. Paulus appeals.

## II.

We have jurisdiction over "final decisions." 28 U.S.C. § 1291. "In the criminal context, that generally means a defendant may lodge an appeal only after the court imposes a conviction and a sentence." *United States v. Martirossian*, 917 F.3d 883, 886 (6th Cir. 2019). There is a very limited list of exceptions to this general rule. It includes the denial of a motion to dismiss based on the Double Jeopardy Clause, *Abney v. United States*, 431 U.S. 651, 662 (1977), but does not include due-process and fraud-on-the-court[1] claims. *See Martirossian*, 917 F.3d at 887. Accordingly, we review only the double jeopardy claim and its "necessary component[s]." *See Richardson v. United States*, 468 U.S. 317, 322 (1984).

We review double jeopardy claims de novo. *United States v. Neal*, 93 F.3d 219, 221 (6th Cir. 1996).

## III.

The Double Jeopardy Clause states that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Supreme Court has interpreted the Clause as a check against "the vast power of the sovereign" to prohibit "prosecutors . . . treat[ing] trials as dress rehearsals until they secure the convictions they seek." *Currier v. Virginia*, 138 S. Ct. 2144, 2149 (2018). But the Clause is not "an insuperable obstacle to the administration of justice" when there is "no semblance" of "oppressive practices." *Id.* (quoting *Wade v. Hunter*, 336 U.S. 684, 688–89 (1949)). In other words, "the Clause does not guarantee that the state's interest in enforcing the criminal laws against a defendant will be vindicated in a single trial." *Phillips v. Ct. of Common Pleas*, 668 F.3d 804, 811 (6th Cir. 2012).

---

[1] Paulus argues that we should exercise our inherent powers to dismiss actions because of "fraud on the court." *See Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993). He also argues that the failure to disclose the letter "was an additional violation of Paulus's right to due process" and makes arguments about "ethical violations." We have no jurisdiction over these independent claims in this interlocutory appeal.

Paulus argues that a unique confluence of procedural steps, along with prosecutorial misconduct, bring his case within the ambit of the Double Jeopardy Clause. First, the district court granted Paulus's motion for acquittal and we reinstated the conviction. Second, we held that the government should have disclosed the *Brady* evidence before trial, so a new trial was necessary. Neither of these steps in isolation implicate the Double Jeopardy Clause. Paulus thus argues that the government's failure to disclose the potential *Brady* evidence during *Paulus I* is the type of oppressive prosecutorial misconduct that implicates the Clause.

But that argument finds no support in our case law. When a defendant is convicted but gets the conviction set aside, an appellate court may reinstate the original conviction without offending the Double Jeopardy Clause. *United States v. Baggett*, 251 F.3d 1087, 1093 (6th Cir. 2001). Likewise, if a conviction is overturned, retrial is permissible. *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988). The remedy for a *Brady* violation is a new trial. *United States v. Presser*, 844 F.2d 1275, 1286 (6th Cir. 1988). And the type of intentional prosecutorial misconduct that implicates the Double Jeopardy Clause has not been extended to *Brady*. *Cf. Oregon v. Kennedy*, 456 U.S. 667, 676 (1982). Even if we did extend it here, it wouldn't apply in this case for two reasons. First, the rule regarding when intentional prosecutorial misconduct triggers double jeopardy applies to mistrials, and here we have a jury conviction. *United States v. Brown*, 994 F.3d 147, 156 (3d Cir. 2021). Second, not disclosing potential *Brady* material under a court order is not intentionally seeking a new trial. *See Kennedy*, 456 at 676. We affirm the district court.

## A.

The district court's grant of Paulus's motion for acquittal doesn't implicate the Double Jeopardy clause. If a jury (or a judge) acquits a defendant, the Double Jeopardy Clause prevents

the government from retrying the defendant.[2] *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982); *Green v. United States*, 355 U.S. 184, 187–88 (1957). But when a jury convicts a defendant and the defendant "succeeds in getting his first conviction set aside," then the Clause does not apply. *Lockhart*, 488 U.S. at 38; *accord Green*, 355 U.S. at 189. So when a "district court grants [a] Rule 29 motion *after* the jury renders a guilty verdict, double jeopardy does not bar appeal by the government" because the appellate court can just order that the jury's verdict be reinstated. *Baggett*, 251 F.3d at 1093.

That's what happened in *Paulus I*. The jury convicted Paulus and then the district court set aside that conviction by granting Paulus's Rule 29 motion. We reversed the district court and reinstated the conviction. At that point, the Double Jeopardy Clause was not implicated.

**B.**

Paulus's successful litigation of his *Brady* claim didn't implicate the Double Jeopardy Clause either. Under *Brady*, prosecutors must disclose material evidence favorable to a defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see Paulus II*, 952 F.3d at 724. When a court finds that prosecutors did not disclose such evidence, "[w]e . . . vacate [the] conviction and remand for a new trial." *United States v. Tavera*, 719 F.3d 705, 708 (6th Cir. 2013). We don't order the case to be dismissed on double jeopardy grounds. *Sanborn v. Parker*, 629 F.3d 554, 580 (6th Cir. 2010) ("What the Double Jeopardy Clause manifestly does *not* do, however, is protect a defendant from

---

[2] Paulus argues that this rule applies to his case because *Paulus II* effectively overruled *Paulus I*, thereby reinstating the district court's judgment of acquittal. He reasons that "the first appellate review of this case would have been fundamentally different" if the government disclosed the Shields Letter, concluding that we "would never have reinstated the jury verdict in the first place."

Paulus's arguments make little sense. In *Paulus I*, we held that there was sufficient evidence (without the *Brady* evidence) for the conviction. In *Paulus II*, we held that the government violated *Brady*. *Paulus II* does not have the effect of invalidating *Paulus I*, nor should it—the issues were entirely distinct. In other words, our holding in *Paulus I* that the evidence was sufficient (without the Shields Letter) has no bearing on whether the evidence at a new trial would be sufficient—that trial hasn't happened yet and we are not the factfinder. Even if the government disclosed the Shields Letter before us in *Paulus I*, the remedy for the *Brady* violation would have been a new trial.

retrial after he has succeeded in obtaining a reversal on appeal because of errors committed at trial . . . ."). This case is no different.

"The decisions which have construed the *Brady* doctrine make it absolutely clear that the remedy for a *Brady* violation is a new trial . . . ." *Presser*, 844 F.2d at 1286; *see Kyles v. Whitley*, 514 U.S. 419, 422 (1995) (noting that when a defendant proves a *Brady* violation, they are "entitled to a new trial"). So after Paulus "succeeded in getting his first conviction set aside" on *Brady* grounds, the Double Jeopardy Clause was not implicated. *Lockhart*, 488 U.S. at 38.

## C.

Paulus argues that the alleged prosecutorial misconduct in *Paulus I*, considered together with his vacated judgment of acquittal and the *Brady* violation, require dismissal under the Double Jeopardy Clause. We disagree.[3]

Prosecutorial misconduct and double jeopardy sometimes intersect. *See Kennedy*, 456 U.S. at 676. The intersection, at least as currently explored, concerns mistrials. The general rule is that when a defendant moves for a mistrial, the defendant waives his right to have his "trial completed before the first jury empaneled to try him." *Id.* at 673. The *Kennedy* exception is that a defendant

---

[3] Paulus argues that the district court incorrectly held that he "waived" his double jeopardy objections by "consenting" to a new trial. As far as waiver is concerned, the district court focused on cases involving mistrials and acquittals. *See, e.g.*, *United States v. Scott*, 437 U.S. 82, 99 (1978) (holding that the Double Jeopardy Clause doesn't prohibit retrial of a defendant after a defendant successfully moves for a mistrial because "[the defendant] was . . . neither acquitted nor convicted, because he himself successfully undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury"). To Paulus, *Burks v. United States* disallows such waiver. In *Burks*, the Supreme Court held that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." 437 U.S. 1, 18 (1978). The Court said that one could not "waive his right to a judgment of acquittal by moving for a new trial." *Id.* (cleaned up).

But here, the jury found Paulus guilty and we held that the evidence was legally sufficient. There is no judgment of acquittal for Paulus to waive because we reinstated the guilty verdict in *Paulus I*, and there was no mistrial. Thus, *Burks* does not directly apply, and we don't reach whether Paulus waived any double jeopardy objection because we hold his substantive arguments to be without merit. *See Ball v. United States*, 163 U.S. 662, 672 ("[I]t is quite clear that a defendant who procures a judgment against him upon an indictment to be set aside may be tried anew . . . for the same offense of which he had been convicted."); *see also United States v. Dinitz*, 424 U.S. 600, 609 n.11 (1976) ("This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right.").

cannot be retried if the government intentionally "goads" a defendant's mistrial motion because the government wants a new trial. *Id.*; *see Phillips*, 668 F.3d at 811. But the bar is high. *See United States v. White*, 914 F.2d 747, 752 (6th Cir. 1990) (holding that deliberate conduct borne from prosecutorial inexperience that elicits a mistrial is insufficient). The question is whether the government intentionally maneuvered in "an attempt . . . to seek a second bite at the apple." *United States v. Foster*, 945 F.3d 470, 475 (6th Cir. 2019).

We construe Paulus's argument as encouraging us to import the *Kennedy* exception into the *Brady* context and beyond the mistrial context. We decline the invitation for two reasons. First, "we do not believe the [Double Jeopardy Clause] may be invoked to supplement the remedies contemplated by *Brady*." *United States v. Coleman*, 862 F.2d 455, 458 (3d Cir. 1988). The two strands of case law cannot be combined in this way because they have different underpinnings. Double jeopardy "places a premium upon the defendant's right to one prosecution" while "due process [(*Brady*)] simply requires that the defendant be treated fairly." *Id.* at 458. Under *Brady*, a defendant is treated fairly when the evidence is ultimately disclosed, so "the most an invocation of *Brady* c[an] accomplish [is] the ordering of a new trial" that includes the new information.[4] *United States v. Davis*, 578 F.2d 277, 280 (10th Cir. 1978); *accord United States v. Lewis*, 368 F.3d 1102, 1107 (9th Cir. 2004). Otherwise, the Double Jeopardy Clause would effectively prohibit retrials after all *Brady* violations.

Second, even if we applied the *Kennedy* exception here, Paulus wouldn't meet it. Courts have discussed extending *Kennedy* beyond mistrials in dicta, but the intent requirement would

---

[4] We recognize that in *Government of Virgin Islands v. Fahie*, the Third Circuit noted that "[w]hile retrial is normally the most severe sanction available for a *Brady* violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper." 419 F.3d 249, 255 (3d Cir. 2005). But the court was quick to note that the Double Jeopardy clause was likely not implicated. "[T]he Double Jeopardy Clause normally will not limit the range of remedies available for a *Brady* violation" because a defendant would need to show that "the government intentionally triggered a mistrial by withholding documents." *Id.* n.8 (citing *Kennedy*, 456 U.S. at 676).

remain. *See United States v. Wallach*, 979 F.2d 912, 916 (2d Cir. 1992) (assuming that a prosecutor would have to intend to "prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct"). "[P]rosecutorial behavior will bar a second trial only where such behavior was intentionally calculated to cause or invite mistrial." *United States v. Thomas*, 728 F.2d 313, 318 (6th Cir. 1984) (cleaned up), *abrogated on other grounds by United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994); *see Smith v. Coleman*, 521 F. App'x 444, 448 (6th Cir. 2013) (noting *Wallach*'s dicta about the reach of *Kennedy* but reaffirming that "the only relevant intent to the double jeopardy inquiry is the prosecutor's intent to terminate the trial, not intent to secure a conviction" (cleaned up)).

It's hard to see how a *Brady* violation could meet the intent requirement. That would necessitate a finding that the government failed to disclose material evidence (usually before trial) to save a potential "second bite at the apple" (but only if necessary). *See Foster*, 945 F.3d at 475; *United States v. Ivory*, 29 F.3d 1307, 1310 (8th Cir. 1994) (restating the district court's reasoning that "even if *Oregon v. Kennedy* applied [to *Brady*], [the] defendant made no showing that the prosecution had attempted to invoke a mistrial" and holding that the defendant failed to state a colorable double jeopardy claim); *United States v. Colvin*, 138 F. App'x 816, 821 (6th Cir. 2005) (applying *Kennedy*'s intent test to a *Brady* violation and holding the test unmet).

But we need not decide whether the *Kennedy* exception can ever apply to *Brady* violations because this case involves neither a mistrial nor intent by the prosecutor to place Paulus under new jeopardy. First, the prosecution did not try to trigger a mistrial. Paulus focuses on the prosecution's nondisclosure of the Shields Letter to us in *Paulus I*. But in *Paulus I*, a jury had already convicted Paulus. So the prosecution did not intend to trigger a new trial, thus putting Paulus in new jeopardy, because they were seeking a reinstatement of the original conviction.

Second, as far as the potentially offensive prosecutorial misconduct that was the original *Brady* violation, it was not intentional.  The record shows that the prosecution wanted to disclose the *Brady* material, but the district court ordered them not to.  *Paulus II*, 952 F.3d at 722.  That is not intentional prosecutorial misconduct designed to trigger a new trial.  So even if we applied the *Kennedy* exception here, Paulus would not meet it.

## IV.

The district court is **AFFIRMED**.